## BURGETT V. APPERSON.

1. HOMESTEAD: *Sale of: Certiorari: Practice.*

   The Probate Court has no jurisdiction to sell the homestead of a decedent during the minority of his children. But where the lands of an estate are sold in a body for the payment of debts, it is not error on *certiorari* to refuse to quash an order confirming the sale on the ground that part of the lands constituted the homestead of the deceased, and that the sale was made during the minority of his child. In such case the Circuit Court, having in the proceeding by *certiorari* no guide ennabling it to separate the lands which the Probate Court had power to sell from those constituting the homestead, the heir will be left to his action at law for the possession of the latter.

2. PROBATE COURT: *Sale of lands: Execution of order made on appeal.*

   Where on appeal from a judgment refusing to sell the lands of a decedent for the payment of his debts, an order of sale is made by the Circuit Court and certified to the Probate Court, it becomes the judgment of the latter by its entry there. And although a subsequent appeal from the judgment of the Circuit Court will suspend the power of the Probate Court to execute such order, its jurisdiction to execute it will be restored from the time when the Circuit Court on the affirmance of its judgment, and in accordance with the mandate of this court, enters a new order directing the sale.

3. SAME: *Same.*

   A sale of the lands before the new order is certified to the Probate Court for execution, although made pursuant thereto, is irregular, and it is error to approve it. But such sale, being supported by a valid judgment, is not void after confirmation.

4. SAME: *Same.*

   Where the lands of an estate, offered for sale under a valid order of the Probate Court, are not sold for the want of a bid equal to two-thirds of their appraised value, no new order condemning them to sale is required by section 184 Mansfield's Digest. But under that statute it is only necessary for the court to provide for the execution of the judgment previously entered by directing that the lands shall be offered for sale to the highest bidder at the end of twelve months after the first offering and on a day fixed for that purpose. A sale made without such new direction is irregular, but where it takes place after the expiration of the year, it is not void when confirmed.

5. CERTIORARI: *When granted.*

   The writ of *certiorari* may be used not only to correct a want of jurisdiction, but also the erroneous proceedings of an inferior tribunal. But it will not lie to review mere errors at the instance of one who has lost the right of appeal by his own fault or who neglects to apply for the writ as soon as possible

after the necessity of resorting to it arises. It is not a writ of right, but one of discretion, and will not be granted except to do substantial justice.

6. SAME: *As a substitute for appeal.*

*Certiorari* cannot be used as a substitute for appeal where the latter is provided, except by a party who could have appealed. But one who, without fault or neglect on his part, loses the opportunity of becoming a party to a proceeding, in the nature of a suit *in rem*, and of thereby acquiring the right of appeal, may, within proper time, resort to the writ of *certiorari*.

7. SAME: *Same: Limitation.*

The period within which the writ of *certiorari* may be granted is not limited by statute. Where, however, it is sought as a substitute for appeal, the time within which an appeal might have been prosecuted is adopted by analogy. But this is not like a statutory rule, binding upon the courts, and the writ is awarded where the ends of justice demand it.

8. SAME: *To quash order confirming sale.*

On *certiorari* issued at the instance of the heir-at-law of a decedent, it is error to refuse to quash an order confirming a sale of the latter's lands where it appears that the sale was made on the application of the only creditor of the estate, and that a body of land comprising 1634 acres, and appraised at $79,340, was sold in bulk to pay a debt amounting to only $10,000; that the creditor was the purchaser, but has paid no money and received no deed; that all the proceedings with reference to the sale except the order directing it, were marked by such irregularities as tended to prevent other persons from bidding; that the heir was an infant of tender years at the time of such proceedings, and that the administrator in whose name the sale was conducted, and who was also the guardian of the heir, was at the time the sale was made and confirmed an imbecile, incapable of attending to any business; that the right of appeal from the order of confirmation was lost through an erroneous act of the Probate Court, and that the heir applied for the writ without delay after arriving at years of discretion.

APPEAL from *Crittenden* Circuit Court.

J. E. RIDDICK, Judge.

*W. G. Weatherford*, for appellant.

No affidavit, as required by *Mansf. Dig., sec. 176*, accompanied the report of sale; nor was there any sworn evidence of any kind before the court. No affidavit, as required by *sec. 184, ib.*, nor any order of court requiring the sale twelve months thereafter was made; nor was there any judicial action of any kind. But lands worth, as appraised, $79,000 were *sacrificed* at $17,000, and *this was not paid*.

*No deed was executed (sec. 177-8, ib.),* so the fee to the land remains in the only heir.

The administrator was her guardian, and there was no one to except or object for her. Besides, her guardian was an imbecile, and incapable of protecting her, if he had so desired, and there was no one to appeal for her.

*Certiorari,* under the circumstances, was her proper and only remedy. *Secs. 1368-9; 30 Ark., 17; 44 id., 267; 25 id., 420; 11 id., 604; 12 id., 85.*

Any one interested may appeal (*12 Ark., 98; 41 id., 106*); and if there was no opportunity to appeal, or the appeal is lost through no fault of theirs, *certiorari* will lie. *21 Ark., 267; 25 id., 524; 37 id., 321; 25 id., 345; 28 id., 87. Certiorari* is one of the *modes* of *appellate review. 39 Ark., 351; 41 id., 107; 12 id., 98.*

2. The Probate Court had no jurisdiction when the order of sale was made. The appeal took the case *out of its jurisdiction. 35 Ark., 300; Freeman Void Jud. Sales, sec. 7; Freeman on Judg., sec. 121.* And the Probate Court could do nothing until the *mandate of the superior court was filed. 41 Ark., 108; 10 Ark., 454.*

3. But if it had jurisdiction, this court should quash its proceedings for *irregularity and illegality.* Having jurisdiction on *certiorari (supra),* it acts as a revising court, and may quash for any illegality apparent on the record. *11 Ark., 604; 25 id., 420; 35 id., 95; 44 id., 267; 39 id., 351; 21 id., 267.*

The cases in which this court has declined to interfere were cases in which the probate proceedings were collaterally attacked, and where, of course, there was no appellate control—cases generally where equity was invoked, but no ground of chancery jurisdiction shown. See *13 Ark., 179; 19 id., 499; 25 id., 58; 31 id., 74.* In all these cases *deeds were executed.* Also, *44 Ark., 269-271; 38 id., 80; 47 id., 419.*

Until confirmation a deed conveys no title; the whole proceeding is under the court's control to confirm or reject. *38*

*Ark., 80; 47 id., 419; 34 id., 353; 23 id., 41; Rorer on Sales*, secs. *1 and 2; Freeman Void Sales, sec. 41.*

The court orders the sale, terms, notice, etc. (*Mansf. Dig., secs. 173-4*); administrator to report under oath (*sec. 176*); execute and acknowledge deed, etc. (*secs. 177-178*); appraisement—two-thirds value (*secs. 180-3*). On failure to sell, administrator must report under oath; *then the duty of the court to order sale at end of one year*, and the administrator to carry into effect *the order. Sec. 184.* No authority to sell *without this* order. *26 Ark., 256.*

Persons under disability not bound to except to the settlements; they will be heard after their removal in frauds, etc. *39 Ark., 158.* No court will confirm sale which it *never ordered.*

The homestead could not be sold during the minority of the heir. *47 Ark., 445; 48 id., 236; 49 id., 75; 50 id., 329.* The court cannot correct this by assigning homestead, but must affirm or *quash* the proceeding. Mrs. Peete is not an innocent purchaser. She confesses that her grantor *never had title.*

4. The decree in the United States Court not *res judicata*, because *set aside* and the cause dismissed.

*O. P. Lyles*, for appellees.

Whether or not the Probate Court made any order for a re-offering at the end of twelve months from the first offer is not material, as the law fixed the time; the sale occurred and was confirmed, and the confirmation reaches back and cures all former omissions or defects. *31 Ark., 74; 25 id., 52; 38 id., 78.*

*Certiorari* is not a proceeding to reverse. *29 Ark., 173; 25 id., 429.* Nor can it be used when an appeal could have been taken. *37 Ark., 318; 25 id., 518.* Errors of jurisdiction only are proper. *25 id., 518; 39 id., 347.* May be quashed. *44 Ark., 509.*

Inadequacy of price is not sufficient to set aside a sale in the absence of fraud. *Ark. Rep.*

Defective will not vitiate it. *13 Ark., 509; 31 id., 82; 13 id., 177.*

All presumptions are in favor of the sale, it being a proceeding *in rem. 12 Ark., 84.* The sale is good, even if procured by fraud, *provided* the purchaser did not participate in the fraud. *44 Ark., 267, 271.*

A confirmed sale passes the title. *25 Ark., 52; 38 id., 78.* It was a proceeding *in rem. 19 Ark., 499.*

The postponement of the sale was proper and for the benefit of the estate. *18 How. U. S., 143; 5 Johns. (N. Y.), 343.*

The law fixed the time of the sale at the end of one year; no new order was necessary. *Mansf. Dig., sec. 183.*

The decree in the United States Court is *res judicata,* and there should be a time when litigation should be conclusive, even against an infant.

The whole matter should have been transferred to equity and ended.

COCKRILL, C. J. The appellant, who is the daughter and sole heir of Isaac Burgett, deceased, presented her petition to the Circuit Court for a writ of *certiorari* to quash an order of the Probate Court confirming a sale of her father's lands made by the administrator to pay debts. The court caused the writ to issue, but quashed it upon an inspection of the record.

It appears from the Clerk's return to the writ that the Probate Court refused to order a sale of the lands upon the petition of Apperson, who was a creditor cf the estate. Apperson appealed to the Circuit Court and there obtained an order of sale. The administrator prosecuted an appeal from the judgment of the Circuit Court, but it was affirmed here. The cause was remanded to the Circuit Court and an order was entered there directing the administrator to make the sale at a time and upon terms named in the order. The original order

of sale made by the Circuit Court had been certified to the Probate Court for execution, but no action was taken under it pending the appeal. The latter order was never certified to the Probate Court, but the administrator offered the lands for sale in pursuance of the new direction of the Circuit Court, and reported to the Probate Court that it had not been sold because no one had bid two-thirds of the appraised value. The report was received and approved, but no other order was made. Something more than a year thereafter, without further authority from the court, the administrator offered the lands for sale without regard to their appraised value; and Apperson, the creditor upon whose petition the order of sale had been made, became the purchaser at the sum of $17,000. No money was paid on the purchase, but Apperson executed his notes for the purchase money, and received from the administrator what is termed in the record, a certificate of purchase. These proceedings were reported to the Probate Court and were there approved, when the administrator immediately resigned. No deed has been made.

The petitioner alleges that she was an infant during these transactions, and had no information of them; that the administrator was her guardian; that at the time the sale was confirmed by the Probate Court, his condition of body and mind was such that he was incapable of protecting her interest; that a part of the land which was sold was her father's homestead at the time of his death; that it is described in the petition for, and in the advertisement of, sale, and in the administrator's report of sale, as the "Burgett home place." It also appears that Apperson was the only creditor of the estate at the date of sale; that his debt amounted to about $10,000, principal and interest, and that a body of land comprising 1634 acres and appraised at $79,340, was offered in bulk to pay his debt. These facts are substantiated by the Probate Court record, except as to the petitioner's age and want of informa-

tion, and the condition of her guardian, which appear from the petition and by affidavit adduced at the hearing.

This proceeding was begun a short time after the petitioner was apprised of the facts, and within less than a year after she had reached the age of 18, which is the age of majority for females. The suit was begun three years and eight months after the order of confirmation.

The Circuit Court declared that the errors complained of did not render the sale a nullity, and for that reason declined to interfere.

That the Probate Court had no jurisdiction to sell the home- 1. HOME-stead during the minority of any of the decedent's children is STEAD: Sale of: the settled law of this State. *McCloy v. Arnett, 47 Ark., 445;* Certiorari: *Nichols v. Shearon, 49 ib., 75; Stayton v. Halpern, 50 ib., 329.* But as that fact did not avoid the sale of the lands, which the court had jurisdiction to sell, and as the Circuit Court had no guide in this proceeding to separate the one from the other, it was not error to decline to interfere upon that ground and leave the petitioner to her action at law for the possession of the homestead tract.

It must be conceded that the Probate Court proceeded irregularly in every step taken in that tribunal after entering the Circuit Court's order of sale upon its records; but none of the errors go to the jurisdiction of the court, and, consequently, its action is not void. The errors are as follows:

It approved the administrator's execution of the order of 2. PROBATE sale without learning from the record what disposition this court COURT: Sale of had made of the matter on appeal. The character of judgment land: Execution of or- it is to execute when an appeal has been prosecuted to the Cir- der made on appeal. cuit Court, should be ascertained from a certified copy of the record of that court; and if the matter is brought to this court for review, it should receive the certificate after the mandate of this tribunal has reached the Circuit Court. But, in this instance, the order of sale which had previously become the Probate Court's judgment by entry there (presumably before the

appeal here was sued out) was affirmed, and the jurisdiction of that court to execute it, which had been suspended by the appeal, was restored, at least from the time when the Circuit Court entered its order in accordance with the mandate. After that it was not without power to proceed. *Green v. Clark, 24 Vt., 136; Durham v. Durham, 16 Gray, 577; Curtis v. Beardsley, 15 Conn., 518.*

3. SAME:
Same.

The court erroneously approved the offering of the lands for sale by the administrator, when no time had been previously fixed by it for a sale, and subsequently approved the report of the sale to Apperson made more than a year afterwards under like circumstances. But a sale upon a day other than that fixed by the order, if made in pursuance of a subsisting judgment of a superior court, is not a nullity after confirmation. It is an irregularity only, and like selling without notice of sale, or without notice of the application to sell, which the statute requires, does not render the sale void, according to a long line of decisions beginning with *Borden v. State, 11 Ark., 12.*

4. SAME:
Same.

The statute which requires that lands which have been offered by an administrator and not sold for want of a bid equal to two-thirds of their appraised value, shall not be re-offered within twelve months (*Mansf. Dig., sec. 184*), does not require a new order condemning the lands to sale. That judgment has already been entered in accordance with another provision of the statute (*sec. 173*), and the day fixed for its execution having passed, it only remains for the court to provide anew for its execution. (*Secs. 174, et seq.*) The sale and confirmation, after the expiration of the year, were not, therefore, made without a valid judgment to support them, and are not nullities.

5. CERTIO-
RARI:
When
granted.

But a want of jurisdiction is not the only defect that the writ of *certiorari* is capable of reaching. The statute prescribes that it may be used to correct erroneous proceedings as well as want of jurisdiction. *Mansf. Dig., sec. 1368.* The writ is granted in two classes of cases, first: where it is shown that the inferior tribunal has exceeded its jurisdiction; and, second,

where it appears that it has proceeded illegally and no appeal will lie, or that the right has been unavoidably lost. *Roberts v. Williams, 17 Ark., 43; Randle v. Williams, 18 ib., 383; Allston, ex parte, 17 ib., 580; Lindsay v. Lindley, 20 ib., 581; Derton v. Boyd, 21 Ark., 264; Vance v. Gaylor, 25 Ark., 32; Tucker v. Yell, ib., 420; Wyatt v. Burr, ib., 476; Payne v. Mc-Cabe, 37 Ark., 321; Pearce, ex parte, 44 ib., 514; Howard v. State, 47 ib., 439–40.*

The cases in our reports in which it is said the writ cannot be used for the correction of erroneous proceedings in the exercise of jurisdiction, are cases in which laches in not appealing were imputable to the petitioner, and the question of jurisdiction alone was presented; as in *Carolan v. Carolan, 47 Ark., 511; Phelps v. Buck, as guardian, etc., 40 ib., 219,* and *Ry. v. Barnes, 35 ib., 95;* or, as in the case of *Haynes v. Simms, 39 Ark., 399,* where the circumstance which prevented the appeal was probably (it was said) a valid excuse for not appealing, but the inferior court, which had jurisdiction, had proceeded regularly, and there was a legal remedy which would prevent injustice if the party was really aggrieved.

Mere errors are never reviewable on *certiorari* at the instance of one who has lost the right of appeal by his own fault, or who neglects to apply for the writ as soon as possible after it becomes necessary to resort to it; and the aid of the writ is never granted except to do substantial justice. It may be refused even where there are no laches on the part of the petitioner and errors are apparent upon the record, if the judgment appears upon the whole to be right; and even when prejudicial errors are apparent, it will be refused if great public inconvenience will result from its issue. *Moore v. Turner, 43 Ark., 243.* It is upon these considerations that it is denominated a writ of discretion and not a writ of right, and it is in part at least for the purpose of informing the conscience of the court for the intelligent exercise of this discretion that the statute provides that testimony may

be heard on the return of the writ. *Rutland v. Commissioners, 20 Pick., 77 ; Hyslop v. Finch, 99 Ill., 179.*

**6. Same:**
**As a substitute for appeal.**

It cannot be used as a substitute for appeal to correct errors where an appeal is provided, except by a party who could have appealed ; and as the heir is not made a party to the record in our probate proceedings to sell lands of a decedent, and cannot ordinarily prosecute an appeal (*Arnett v. McCam, 47 Ark.*), he cannot use the writ as a substitute for appeal. But the application to sell lands in such cases is in the nature of a proceeding *in rem.* (*Adams v. Thomas, 44 Ark., 267; Waples Pro. in Rem., secs. 578–9, 566*), and as the heir is a party in interest, the court may upon his petition cause him to become a party to the record, and so clothe him with the right of appeal. If he neglects to become a party he cannot use the writ of *certiorari* as a substitute for appeal. But if he has lost the opportunity of becoming a party and thereby of acquiring the right of appeal without his fault, he has lost his appeal without fault and may, within proper time, resort to

**7. Same:**
**Same:**
**Limitation**

the writ of *certiorari.*   *Derton v. Boyd, 21 Ark., 264.* There is no statute limiting the period within which the court may grant the writ, but where the effort is to use it as a substitute for appeal, the time within which the appeal might have been prosecuted is adopted by analogy. But as this is not a binding rule, like the statute, the courts have not strictly adhered to it, but award the writ where the ends of justice demand it.

**8. Same:**
**To quash order confirming sale.**

The question now is, ought the writ to be used for the petitioner's benefit?  The statement of the case shows that no hardships will be entailed upon the purchaser. He has paid no money ; and has received no deed, so that no one claiming under him could have been led to believe that he was the true owner. He was instrumental in procuring the sale in bulk of more lands than appear to have been required for the payment of his debt; he was a party to the record and is presumed to have known that irregularities existed, the natural tendency of

Burgett v. Apperson.

which was to redound to his benefit by preventing others from bidding at the sale which he brought about.

Upon the other hand does the petitioner show a valid excuse for not becoming a party to the proceeding and prosecuting her appeal? She was not apprised by the record that any time had been fixed for the sale of the land, and lost her right to take the necessary steps to prosecute an appeal from the judgment of confirmation, by the erroneous action of the court in confirming a sale made on a day not fixed by its order. But the defeat of an appeal by the erroneous action of the court, is one of the established grounds justifying a resort to *certiorari*. *McMurray v. Milan,2 Swan. (Tenn.), 176.* Her guardian may be said to have had knowledge of the sale, because he was the administrator in whose name it was conducted, but the uncontradicted proof adduced at the hearing was to the effect that he was an imbecile at his house when the sale was made, incapable of attending to any business, and his resignation as administrator appears to have been prepared and held in abeyance only until the order of confirmation could be made. The petitioner was, herself, an infant of tender years, and appears to have acted without delay after arriving at years of discretion.

The court erred in refusing to quash the order confirming the sale to Apperson. The judgment will be reversed and the cause remanded, with instructions to do so.