## LANGLESS *v.* McCARTHY.

### Opinion delivered November 23, 1925.

1. APPEAL AND ERROR—DIRECTED VERDICT.—Where a verdict was directed against appellant, the testimony will be viewed on appeal in the light most favorable to her.

2. VENDOR AND PURCHASER—POSSESSION AS NOTICE.—Where possession of land was in one who claimed title under contract with the owner, another who took deed from the owner's heir at law which such possession continued took subject to the former's claim of title.

3. ESTOPPEL—EFFECT OF LETTER.—One in possession and claiming the fee to land under a contract whereby the owner was to make conveyance to her in consideration of supporting the owner will not be estopped from making such claim by a letter to one who subsequently took a deed from the owner's heir, in which she stated that at her death the heir would receive the property.

4. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY LAND.—In an action at law to confirm title to property bought by the grantee of the title-owner's heir at law, an intervener in possession, claiming title under an oral contract whereby the owner was to convey the property to her in consideration of support, may ask for a transfer to equity in order to have the contract specifically performed.

5. QUIETING TITLE—JURY QUESTION.—In an action to confirm title brought by one claiming under deed from the title-owner's heir at law, where an intervener claimed equitable title under an oral contract with such owner, whereby she was to receive a conveyance in consideration of support of the owner, evidence *held* sufficient to make a question for the jury as to her right of possession.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; reversed.

*I. J. Matheny,* for appellant.

*J. Paul Ward,* for appellee.

SMITH, J. Appellee J. V. McCarthy filed a petition in the chancery court of Independence County to confirm his title to a 160 acre tract of land in that county. Appellant Mrs. Langless intervened in the case, and was made a party thereto, and the cause was transferred to the circuit court, where there was a trial before a jury. At the conclusion of the testimony the court directed the

jury to return a verdict in favor of appellee, and this was done. In view of the fact that the verdict was directed by the court against appellant we must view the testimony in the light most favorable to her, and when this is done it may be summarized as follows:

A. C. Hannas owned a small hill farm, of which about fifty acres were under fence, and about twenty acres in cultivation. Hannas and his wife had an only child, a son, who left home in 1902, and he had not thereafter returned, and he wrote to his parents at rare and irregular intervals.

On September 13, 1905, Hannas conveyed the farm to his wife, and Mr. Hannas died soon after executing this conveyance.

Appellant Mrs. Langless was a sister-in-law of Mrs. Hannas, and she and her husband lived on a farm adjoining the one owned by the Hannas. A portion of the Langless farm had been purchased by them from the Hannas.

Upon the death of Mr. Hannas his wife proposed to Mr. and Mrs. Langless that they sell their farm and move to the Hannas place and take charge of it and of her, and agreed that, if this was done and Mrs. Hannas was furnished a home during the remainder of her life, and was taken care of by Mr. and Mrs. Langless, they could have the farm on Mrs. Hannas' death.

Pursuant to this proposition, Mr. and Mrs. Langless sold their own farm, and moved to the Hannas place the day after Mr. Hannas died and took charge of it, and thereafter furnished Mrs. Hannas a home, and took care of her until the time of her death, which occurred April 5, 1914. After the death of Mrs. Hannas, Mrs. Langless caused the Hannas farm to be assessed in his name, and he paid the taxes thereon in his own name until his death, which occurred in 1918, and after the death of Mr. Langless, Mrs. Langless caused the land to be assessed in her name, and she paid the taxes thereon continuously until 1922.

In 1921 Mrs. Langless put a tenant in possession named Bishop, who paid her rent for that year. Bishop remained in possession during the year 1922 but refused to pay the rent to her and attorned to appellee. Bishop continued in possession during the year 1923, and has not paid the rent to anyone for that year.

Mrs. Langless testified that Mrs. Hannas agreed Mrs. Langless "should have the land," and that on the day before she died, she asked that a neighbor, who was a justice of the peace, be sent for to prepare the deed, but Mrs. Hannas' direction in this matter was not complied with on account of her condition.

On her cross-examination by counsel for appellee, Mrs. Langless was asked the question: "Q. Wasn't it your understanding, and isn't it your understanding now, that you were to have the home to live in as long as you lived?", and Mrs. Langless answered: "A. No, sir; it was my understanding that I should have a deed to it."

Mrs. Langless was corroborated by several neighbors as to the circumstances under which she and her husband moved to and took possession of the Hannas place, and it was shown by legally sufficient testimony, if not the undisputed testimony, that Mrs. Langless fully performed her agreement in regard to furnishing Mrs. Hannas a home and caring for her until her death.

On October 11, 1922, Mark Hannas, who was the only child of Mr. and Mrs. Hannas, and who never returned home after leaving it in 1902, executed a warranty deed to appellee for a consideration recited to be $500 cash in hand paid, and it was upon this deed that appellee predicated his suit to confirm his title, and the cause was transferred to the circuit court when it developed that there was an occupant in possession claiming title to the land.

There was introduced in evidence a letter from appellant to appellee, which reads as follows:

"Hutchinson, Aug. 21, 1922.
"Lawyer McCarthy,

"Dear Sir: I understand that some one has written to you about this place that I am living on. They are trying to make trouble for me. I should like to know who wrote to you if you will be so kind as to tell me, as I am sixty-five years old, and no one to help me in any way. As far as the place is concerned, I think it is mine, as I let my home be sold to help take care of Mark Hannas' father and mother as he would not stay and take care of them. Now they are all dead and also my husband, which leaves me no one to take care of me; which, if any one tries to take this place, I can show what I have done for them all. When I am through, it will go to Mark Hannas. Now, if you are a gentleman, which I think you are, you will let me know who it is. Please answer and oblige.

"Mrs. Annie Langless.
Hutchinson, Ark."

It is insisted that the statement contained in this letter, that "When I am through, it will go to Mark Hannas," is a recognition of the title of Mark Hannas, and an admission by Mrs. Langless that she did not own the land. It appears, however, that Mrs. Langless was a woman without business experience or legal knowledge, and she explained that, although the farm had been given her, she supposed, in view of the fact that she was "alone in the world," as she expressed it, and had no heirs, that the land would revert to Mark Hannas on that account at her death, and that she did not mean to admit that the land did not belong to her pursuant to her contract for the title.

It was the theory of the court that Mrs. Langless had a permissive possession only, which had not ripened into title by adverse possession, and in directing the verdict the court said: "There is no evidence in this case that the deed was ever made. There is evidence that they said they would make it, but it was never made. They

were there by permission. Gentlemen of the jury, as a matter of law in this case, it is your duty to return a verdict for the plaintiff.''

As we understand the case, viewing it in the light most favorable to appellant, her right to recover is not dependent on an adverse possession, although the testimony shows a possession of a portion of the land for a longer period than seven years after the death of Mrs. Hannas. The real source of Mrs. Langless' title is the contract under which she sold her own farm, and moved to the Hannas farm. All the proper parties to enforce this contract are not before the court, and if a specific performance thereof is asked by the execution of a deed the cause should be transferred back to the chancery court, where that relief could be granted, if the testimony, in its entirety, warrants that relief.

The case of *Williams* v. *Williams*, 128 Ark. 1, is sufficiently like this case—from the standpoint of Mrs. Langless—to entitle her to affirmative relief if it be adjudged that the testimony has established her contention. The syllabus in that case reads as follows: ''Deceased agreed to give certain lands to plaintiff if he would come to deceased's home, live with him and take care of him; plaintiff left his employment in a nearby town, and removed to deceased's home, and performed his part of the undertaking. *Held,* after deceased's death, that equity would enforce the agreement, although the same was only orally made.''

It is recited in the opinion in that case that there was some doubt whether the agreement was that the owner of the land was to convey to the claimant during his lifetime, or was to convey it by last will. The basis of the claim in that case was that there was a contract whereby claimant was to get the property in consideration of his services, and we said: ''It is entirely unimportant as to the particular method in which the property was to be conveyed. The proof having established the contract and a performance of its terms by the plain-

tiff, it follows that a court of equity should grant him relief."

The deed to appellee from the heir-at-law was made while Mrs. Langless was in possession, and appellee therefore took his deed subject to Mrs. Langless' claim of title, whatever it might be. Her possession was an assertion of whatever title she had, and should have put appellee upon inquiry. *First Nat. Bank of Paris* v. *Gray,* 168 Ark. 12.

The letter from Mrs. Langless to appellee is, of course, evidence as to what this title was, but we think there is nothing in it which estops Mrs. Langless from claiming the title, and she has the right to explain any ambiguity in the letter. This letter was written to appellee before he received his deed from the son and heir-at-law of Mrs. Hannas, and in this letter. Mrs. Langless stated that she thought the land was hers. She did say that when she was "through" it (the land) would "go to Mark Hannas." She did not explain whether this would be done by a conveyance from her, or by operation of law, and appellee took his deed without asking any explanation of this ambiguous statement, and Mrs. Langless has the right to explain the letter, as it contains nothing which estops her from asserting a present right of possession.

For the error in directing a verdict in appellee's favor, the judgment will be reversed, and, if appellant asks the affirmative relief of specific performance and brings the proper parties before the court to obtain that relief, it would be proper to transfer the cause back to the chancery court, where this issue could be properly disposed of. But, whether this is done or not, appellant has the right to assert her equitable title in this suit at law; and the testimony offered in her behalf is sufficient to make a question for the jury, as to her right of possession, in opposition to appellee's claim to a present right of possession. *Trulock* v. *Taylor,* 26 Ark. 54; *Sledge-Norfleet Co.* v. *Matkins,* 154 Ark. 509; *Marsh* v. *Erwin,*

155 Ark. 371; *Nichols* v. *Shearon,* 49 Ark. 75; *Gates* v. *Gray,* 85 Ark. 25; *Natlin* v. *Riley,* 54 Ark. 30; *Reeve* v. *Jackson,* 46 Ark. 272; *Moore* v. *McCloy,* 70 Ark. 505; *Daniel* v. *Gavner,* 71 Ark. 454; *Crawford County Bank* v. *Batton,* 87 Ark. 142.

Judgment reversed and cause remanded.