BOWERS *v.* RIGHTSELL.

Opinion delivered April 25, 1927.

1. EJECTMENT—PRAYER FOR ACCOUNTING—TRANSFER TO EQUITY.—In a suit in ejectment by a tenant in common, a prayer for judgment for half of any rents and profits defendant may have received from the land calls for an accounting, and a motion to transfer to equity was properly granted.

2. EQUITY—COMPLETE RELIEF.—When the chancery court takes jurisdiction of a case for one purpose, it will decide all the issues raised by the pleadings.

3. TENANCY IN COMMON—RIGHT TO MAKE IMPROVEMENTS.—A tenant in common has a right to make improvements on the land without the consent of his co-tenants, and, although he has no lien on the land for the value of the improvements, he will be indemnified for them, whether made by him or by those claiming under him, in a proceeding in equity to partition the land between himself and his co-tenants, either by having the part upon which the improvements are located allotted to him, or by having compensation for them if thrown into the common mass.

4. EJECTMENT—EQUITABLE DEFENSE.—In ejectment defendant did not have to wait until the title to the land was settled before asserting an equitable right for compensation for improvements.

5. TRIAL—TRANSFER OF CAUSE.—A defendant, when sued at law, must make all the defenses he has, both legal and equitable, and if any of them are exclusively cognizable in equity, he is entitled to have the cause transferred to equity.

6. APPEAL AND ERROR—PLEADINGS AMENDED TO CONFORM TO PROOF.—In ejectment, where the undisputed evidence showed that defendant had made valuable improvements, the pleadings will be considered on appeal as amended so as to entitle him to compensation for them in equity.

7. DESCENT AND DISTRIBUTION—NEW ACQUISITION.—In case of a new acquisition, a surviving widow, in the absence of any children, takes a half interest in her deceased husband's land, as tenant in common with his heirs at law.

8. ADVERSE POSSESSION—GRANTEE OF TENANT IN COMMON.—Where a tenant in common of a half interest in land conveys the entire estate to another who takes possession under claim of the entire estate, his possession is adverse to the other tenants in common, and he acquires title by occupancy for the statutory period, except as to those under disability.

9. ADVERSE POSSESSION—CO-TENANCY.—In order for possession of a co-tenant to be adverse to his co-tenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts that notice may be presumed.

10. ADVERSE POSSESSION—EXTENT.—Actual possession of a part of land under deed describing a larger tract uninclosed is possession of the entire tract.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Wash Bowers instituted an action of ejectment in the circuit court against W. W. Rightsell and W. M. Ramsey to recover an undivided one-half interest in eighty acres of land and for one-half of the rents and profits.

According to the allegations of the complaint, both parties claim from a common source of title. Daniel Bowers died intestate in Pulaski County, Arkansas, on the 28th day of February, 1908, owning the land in controversy. He had no children, and, the lands being a new

acquisition, one-half went to his widow, Betty Bowers, and one-half to his mother, Melvina Farmer, for life, and then to the collateral heirs of Dan Bowers. Melvina Farmer died in October, 1908, and Betty Bowers and the collateral heirs of said Daniel Bowers became tenants in common of said land. The collateral heirs of Daniel Bowers are his brother, Wash Bowers, the plaintiff in this action, and certain nephews and nieces, who have not conveyed their interest in said land to the plaintiff, and certain other collateral heirs who have conveyed their interest to the plaintiff. The names of all the collateral heirs are set out in the complaint. Betty Bowers executed a deed to said land to W. W. Rightsell, who is now in possession of it and is withholding a one-half undivided interest im it from this plaintiff. The plaintiff further alleges that said Rightsell has sold, rented or in some manner let a part of said tract of land to the defendant, W. M. Ramsey, who is now unlawfully withholding the possession of same from this plaintiff.

The defendant, Rightsell, filed an answer, denying the allegations of the complaint and claiming title to the land by mesne conveyances from Melvina Farmer and by adverse possession. He moved for a transfer to equity, which was granted, over the objections of the plaintiff.

The plaintiff introduced evidence tending to prove the allegations of his complaint.

The defendant, Rightsell, introduced in evidence a deed to said land from Melvina Farmer to Betty Bowers, executed on the 11th day of March, 1908, and a deed from Betty Bowers to himself, executed on the 20th day of January, 1912. As soon as Rightsell obtained possession of the land, under his deed from Betty Bowers, he inclosed the same with a wire fence in 1912, and ever since has been in exclusive possession of said land, claiming it as his own. He owned land next to it, which was occupied by his tenants, and he rented the land in question to them, and they cultivated a part of it. Rightsell has

paid taxes on the land ever since he received a deed to it. The plaintiff, Wash Bowers, helped to inclose the land with a wire fence, and ever since then has lived within two miles of the land, and knew that W. W. Rightsell had possession of it and was claiming it as his own. About three years before the trial of the case, which was in March, 1926, the defendant, Rightsell, erected a filling station on the land at a cost of $1,500, and also a small house. On the part of the plaintiff it was shown that, in 1917, a part of the wire fence was torn down, and was not thereafter rebuilt. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the defendants, and it was decreed that the complaint of the plaintiff should be dismissed for want of equity and the title to said land be confirmed in W. W. Rightsell, free from any claim or interest of the plaintiff. To reverse that decree the plaintiff has duly prosecuted an appeal to this court.

*J. F. Wills* and *Frank Strangways,* for appellant.

*Robinson, House & Moses,* for appellee.

HART, C. J., (after stating the facts). It is earnestly insisted by counsel for the plaintiff that the decree should be reversed because the plaintiff had a right to maintain his action of ejectment in the circuit court, and that it was reversible error to transfer the case to the chancery court and try it there. It is true that it was held in *Trapnall* v. *Hill,* 31 Ark. 345, that, where one tenant in common ousts another, or does some act amounting to a total denial of his rights as co-tenant, the latter may maintain ejectment, and, under the statute, may recover his proportion of the rents and profits in the action. It is also held in that case that, in matters of account, especially where a trust exists as between tenants in common, courts of equity exercise concurrent jurisdiction with courts of law. Hence in that case it was held that, upon a complaint in equity by a tenant in common, alleging an ouster by his co-tenant and praying an account of

the rents and profits received by him, and possession of his share of the premises, the court will entertain jurisdiction.

The difference between that case and the case at bar is that, in the former case, the plaintiff elected to sue in equity, and in the present case he elected to sue at law, and the case went to equity over his objections. It will be noted, however, that the plaintiff in his complaint alleged matters which gave the chancery court jurisdiction. He did not sue for the rents in a lump sum in the way of damages, but prayed judgment "for one-half of any rents and profits said Rightsell may have received from" said land. This amounted to a prayer for an accounting, and, from the allegations of the complaint, it appears that the defendant has been in possession of the land for several years and that he has sold a part of the land to W. M. Ramsey and put him in possession of the same. Thus it appears that the accounts would run through several years; and the court, in its discretion, might transfer the case to the chancery court for the reason that the accounting could be better settled in a court of equity than by a jury. It is the settled rule in this State that, when a chancery court takes jurisdiction of a case for one purpose, it will decide all the issues raised by the pleadings.

Moreover, the plaintiff alleges that Rightsell had sold a part of the land to W. M. Ramsey and had placed him in possession of it. The proof on the part of the defendant, Rightsell, shows that he had erected a filling station on the land at a cost of $1,500. and also a small house. In this connection it may be stated that we are testing the question of jurisdiction under the allegations of the complaint and the proof offered to establish them. According to the allegations and proof made by the plaintiff, he was a tenant in common with the defendant, Rightsell. It is well settled in this State that, in his relation as tenant in common, one has a right to make improvements on the land without the consent of his

co-tenants; and, although he has no lien on the land for the value of his improvements, he will be indemnified for them, whether made by himself or those claiming under him, in a proceeding in equity to partition the land between himself and co-tenants, either by having the part upon which the improvements are located allotted to him, or by having compensation for them, if thrown into the common mass. *Drennen* v. *Walker,* 21 Ark. 539; *Dunavant* v. *Fields,* 68 Ark. 534, 60 S. W. 420; and *Lemly* v. *Works,* 138 Ark. 426, 211 S. W. 362. The undisputed proof shows that the land was situated near the city of Little Rock and on a public road leading into the city. Rightsell built a small house and, in addition thereto, a filling station, at a cost of $1,500. Under the authorities above cited, Rightsell would have the right in equity to be compensated for these improvements if they could be allotted to him in the division of the land, or, if not, he could be compensated for them, if that could be done without doing injustice to his co-tenant.

It is true that Rightsell was claiming title to the land by adverse possession, and that his claim of title to the whole of the land should be first settled. But, in the event that the court should decide adversely to him, he would have been entitled to have the case transferred to equity to assert his rights to compensation for improvements, under the rule stated. He need not wait until the title to the land was settled before asserting his rights. It is well settled in this State that a defendant, when sued at law, must make all the defenses he has, both legal and equitable, and, if any of them are exclusively cognizable in equity, he is entitled to a transfer to equity. *Daniel* v. *Garner,* 71 Ark. 484, 76 S. W. 1063, and *Langless* v. *McCarthy,* 169 Ark. 948, 277 S. W. 27.

It is also well settled that the pleadings in a case may be considered amended so as to conform to the proof. *Britton* v. *Meriwether,* 166 Ark. 414, 265 S. W. 364. The undisputed evidence shows that Rightsell made these improvements, and the pleadings should be con-

sidered amended so as to entitle him to be compensated for them in equity.

The result of our views is that the chancery court had jurisdiction of the case on the question of accounting by Rightsell in his fiduciary relation to the plaintiff under the allegations of the complaint, and also in asserting his rights to compensation in equity for the improvements if the plaintiff should prevail as to his claim of title. Hence there was no error in transferring the case to the chancery court and trying it there.

The defendant, Rightsell, asserted title to the land by adverse possession. Daniel Bowers died, leaving his widow, Betty Bowers, and no children. He also left surviving him his mother, Melvina Farmer, and the plaintiff, his brother, and other collateral heirs. His widow became invested with an undivided one-half interest in the land as tenant in common with his brothers and sisters, after the death of his mother. *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 970. According to the allegations of the complaint, the estate was a new acquisition, and Betty Bowers became a tenant in common with the plaintiff and other collateral heirs of Dan Bowers after the death of Melvina Farmer, the mother. Melvina Farmer executed a deed conveying the title to all the land to Betty Bowers, and she in turn conveyed all of the land to the defendant, Rightsell. A conveyance by a co-tenant of the entire estate to a stranger gives color of title; if possession is taken thereunder, and the grantee claims the whole, his possession is adverse to the other tenants in common, and he acquires title by occupancy for the statutory period, except as to those under disability. *Jackson* v. *Cole,* 146 Ark. 565, 226 S. W. 513, and *Parsons* v. *Sharpe,* 102 Ark. 611, 145 S. W. 537.

It is also well settled that, in order for the possession of a tenant in common to be adverse to that of his co-tenants, knowledge of the adverse claim must be brought home to him directly or by such notorious acts of unequivocal character that notice may be presumed. *Singer* v. *Narron,* 99 Ark. 446, 138 S. W. 958; and *Oliver*

v. *Howie,* 170 Ark. 758, 281 S. W. 17. In the case at bar, when Rightsell received his deed from Betty Bowers in 1912 he took possession of the entire tract as his own, and erected a woven wire fence forty-two inches high around it. He put two barbed wires above the woven wire. The plaintiff helped him erect the fence, and has lived within two miles of the place ever since. The evidence for the defendant, Rightsell, shows that he has been in the exclusive adverse possession of the land ever since he received the deed to it in 1912 and has paid the taxes on the land since that time.

The evidence for the defendant shows that he took possession of the land under a deed in January, 1912, which constituted color of title, and has held adverse possession of it ever since, which was more than seven years before this suit was brought. It is true that the plaintiff attempts to contradict his evidence on this point by showing that the fence which the plaintiff helped the defendant build when he took possession of the land in 1912 was broken down in places by soldiers from Camp Pike passing through it in 1917, but we do not think the evidence sufficient for that purpose. It has been repeatedly held by this court that the actual possession of a part of the land under a deed describing the entire tract is in law possession to the limit of the whole land. *Johnson* v. *Elder,* 92 Ark. 30, 121 S. W. 1066, and cases cited; and *Moore* v. *McHenry,* 167 Ark. 483, 268 S. W. 858. The undisputed evidence shows that the defendant's tenants cultivated some parts of the land each year after the defendant took possession of it in January, 1912. The plaintiff could not have been, in any event, prejudiced by the action of the court in transferring the case to chancery and trying it there. The result should have been the same whether the case was tried at law or in equity.

It follows that the decree of the chancellor was correct, and must be affirmed.