ROCKAMORE v. PEMBROKE.

4-7614                                    188 S. W. 2d 616

Opinion delivered July 2, 1945.

*O. W. Pete Wiggins,* for appellant.

*Chas. Jacobson* and *Philip A. De Salvo,* for appellee.

McFADDIN, J. Three chancery cases between the same parties were consolidated for trial; and from a decree for appellees, there is this appeal. The cases involved the same house and lot in North Little Rock, which is referred to herein as "the property." The appellant is the surviving husband of Letha Pembroke Rockamore, who was the wife and later the widow of Simon Pembroke, prior to her marriage to the appellant. The appellees together constitute the collateral heirs of Simon Pembroke and the collateral heirs of Letha Pembroke Rockamore.

In 1920, Simon Pembroke contracted to purchase the property from Eli Boyd and wife for $1,315, making a small down payment, and agreeing to make small payments regularly thereafter until principal and interest should be paid in full. Later, Simon Pembroke married Letha Pembroke; and on September 1, 1928, Eli Boyd and wife executed, acknowledged and delivered a warranty deed to Simon Pembroke conveying the property to him; but this deed was lost or destroyed. On October 5, 1932, Simon Pembroke departed this life intestate, without children or descendants, but with collateral heirs. After the death of Simon, Letha Pembroke obtained from Eli Boyd and wife another warranty deed, in which Letha was named as the grantee; and she continued to occupy

the property. On January 3, 1933, Letha Pembroke married the appellant, George Rockamore; and on May 23, 1933, Letha Pembroke Rockamore died without surviving children or descendants, but with collateral heirs. Thereafter, the litigation began; and we refer to the three cases by the chancery court numbers.

## Case No. 52777

On November 5, 1935, all the collateral heirs of Simon Pembroke, together with all the collateral heirs of Letha Pembroke Rockamore, filed suit in the Pulaski Chancery Court against George Rockamore. The plaintiffs in that suit are the appellees here, and the defendant in that suit is the appellant here. A decree was rendered in that case on December 6, 1935, finding:

(1) that there had been personal service of summons on George Rockamore and a default of appearance by him;

(2) that Simon Pembroke died the owner of the property by virtue of the 1928 deed from Eli Boyd and wife;

(3) that the 1932 deed should be reformed to name Simon Pembroke as the grantee, instead of Letha Pembroke;

(4) that Simon Pembroke died without children or descendants;

(5) that Letha Pembroke, his surviving wife, received a fee interest in one-half of the property, and the other one-half fee interest went to the collateral heirs of Simon Pembroke;

(6) that Letha Pembroke, after marrying George Rockamore, died without children or descendants;

(7) that the one-half fee interest of Letha Pembroke Rockamore descended to her collateral heirs subject to the rights of George Rockamore, which rights were found to be a one-half interest for life in the one-half fee interest of Letha Pembroke Rockamore.

The ordering part of the decree followed these findings, and adjudged all costs against George Rockamore.

As before stated, this decree was rendered and entered in December, 1935. It remained unquestioned until October 31, 1944, when George Rockamore filed a motion to set aside the said decree, claiming: (1) that he had never been served with summons in the case; and (2) that the decree should be vacated "in order that the defendant might interpose his valid and meritorious defense here." The motion did not state what the defense was. On November 8, 1944, this motion was heard on oral testimony, and the decree in the three consolidated cases denied the motion; and this ruling is assigned as error.

The chancery court was correct in refusing to set aside the 1935 decree. That decree recites that due service of process (by personal service of summons) has been obtained on George Rockamore for the time and in the manner required by law, and that the said George Rockamore had wholly made default. In addition to this recital in the decree, the appellant concedes that the return of the sheriff on the summons issued against George Rockamore in case No. 52777 on November 5, 1935, reads as follows:

"I have this day served copy of summons on the defendant, George Rockamore, by delivering a copy to him in said county. L. B. Branch, Sheriff, by E. J. Smith, Deputy Sheriff."

Appellant furthermore concedes that a summons was brought to him in the case. But appellant claims that the summons was brought by a little boy, and that appellant then consulted John D. Shackleford, a lawyer (now deceased), and was advised that the service of summons was not legal. On that advice the appellant made no defense, but admitted having been in the courtroom while certain proceedings were being had; and, regarding these proceedings, it was shown that the cause in which Rockamore was a defendant was being tried. Thus the decree recites a summons served on the defendant; and the re-

turn of the sheriff recites service on the defendant; and the defendant admits that he received a paper, and was in the courtroom while the case was being tried. With this record, the chancery court was correct in refusing to set aside the 1935 decree. The burden was on George Rockamore to introduce evidence to overcome the sheriff's return. *M. & P. Bank* v. *Ussery*, 183 Ark. 838, 38 S. W. 2d 1087. This he failed to do.

Furthermore, under § 8249 of Pope's Digest the additional burden was on George Rockamore to allege and prove a meritorious defense to the cause of action alleged in the complaint filed in 1935 in case No. 52777. This he entirely failed to do. He merely alleged as a conclusion that he should be allowed to assert his defense. He never said what defense he had in 1935 to the complaint. His failure to detail his defense was fatal. *O'Neal* v. *B. F. Goodrich Rubber Co.*, 204 Ark. 371, 162 S. W. 2d 52.

So, we affirm so much of the decree of November 8, 1944, as refused to set aside the decree rendered in 1935 in case No. 52777.

### Case No. 70613

On July 13, 1944, appellant filed against the appellees this suit to quiet title to the property. Appellant claimed that since 1933 he had continuously been in open, notorious and adverse possession of the property, and had paid all taxes. In the alternative he claimed that Simon and Letha Pembroke had agreed between themselves that they would own this property by the entirety. The appellees answered; and this cause was heard by the chancery court; and on November 8, 1944, the decree was rendered against the appellant.

The chancery court was correct. Under the decree rendered in 1935 in case No. 52777, the appellant and the appellees were cotenants in the property. Jones on "Arkansas Titles," Chap. VI (p. 158 *et seq.*), has a splendid discussion on common tenancy. It is there stated:

"Where widow takes fee in half of her husband's lands, she holds as common tenant with his heirs,

. . . ; and, at her death, her heirs become tenants in common with such heirs, . . .''

The cases cited to sustain the text are: *Bowers* v. *Rightsell,* 173 Ark. 788, 294 S. W. 21, and *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 790. Thus, appellant and appellees were cotenants, and there was no proof that any notice of any kind was ever given by George Rockamore to the appellees advising them that he was holding adversely to them. *Bowers* v. *Rightsell, supra,* is authority for the statement that until such notice is given, limitation does not run in favor of one cotenant against another. George Rockamore paid the taxes, and his cotenants allowed him the use and occupancy of the land, but he never did anything—so far as the evidence shows here—to cause his cotenants to have any reason to believe that he was claiming adversely to them. Under these facts, his title would never ripen into adverse possession against his cotenants. Jones on ''Arkansas Titles,'' § 210. The entire basis of appellant's cause in case No. 70613 was adverse possession; and he offered no proof that limitation had ever commenced to run in his favor.

As to appellant's alternative claim that Letha Pembroke and Simon Pembroke agreed between themselves that they would own this property by the entirety, there are two answers: (1) there is no proof of any kind to support any such allegation; and (2) estates by entirety cannot be created in any such way. See *Stewart* v. *Tucker,* decided April 30, 1945, *ante,* p. 612, 188 S. W. 2d 125.

So we affirm so much of the decree of November 8, 1944, as involves case No. 70613.

### Case No. 71328

On October 2, 1944, appellees filed suit against appellant for partition and sale of the property, alleging the interest of the parties as set out in the 1935 decree in case No. 52777, and alleging that the property was not susceptible of partition in kind; and prayed that the property be sold by a commissioner and the proceeds

divided in accordance with the interests of the parties. Appellant filed answer resisting the sale, and claimed to own the property by adverse possession. In the decree of November 8, 1944, the court ordered the property sold and the proceeds divided; but the sale was stayed pending disposition of this appeal, and upon payment of rent by the appellant.

What we have said in disposing of case No. 70613, *supra*, disposes of appellant's claim of adverse possession; but appellant insists that the property should not be sold, because his life estate could not be fairly and justly measured or determined in distributing the proceeds of the sale. We see no merit in this contention. Section 10510 of Pope's Digest allows property to be sold when life tenants are interested; and we held in *Ward* v. *Pipkin*, 181 Ark. 736, 27 S. W. 2d 523, that a cotenant having an interest in land that could not be divided in kind, had a right, where his title was admitted, to a decree for the sale of the property for purposes of partition. After the property is sold and the proceeds brought into court, then the chancery court can easily determine the present cash value of the appellant's life estate. "Dower and Curtesy Tables" by Giauque and McClure is a volume of 200 pages, and shows the method of such computation. In the appendices to Volume II of Scribner on "Dower," Second Edition, the tables and the rules of calculation are shown. We affirm so much of the decree as ordered a sale of the property.

Finding no error, the decree of the chancery court is, in all things, affirmed.