HENDERSON *v.* HENDERSON.

4-8321                                    204 S. W. 2d 911

Opinion delivered October 13, 1947.

*Kenneth C. Coffelt,* for appellant.

*J. H. Carmichael,* for appellee.

SMITH, J. It is sought in this case to partition a homestead. The parties in interest are two brothers, M. A. and H. B. Henderson, and Carrie M. Henderson, their mother. The suit was filed in the name of Carrie M. Henderson, the mother, and M. A., one of the sons, against H. B. Henderson, the other son. An accounting

for and a division of certain money and personal property was also prayed, but that division has been made and that question has passed out of the case. The complaint alleged that the brothers own jointly a certain 30-acre tract of land on which the mother has resided for many years, and two adjoining 40-acre tracts of land, all of which comprise and are a part of their mother's homestead, the father of the two sons having died many years ago.

It was alleged that the mother has a dower and homestead interest in the real estate, and that "she consents to the bringing of this suit for partition and asks that her dower in the real estate be protected." It was alleged that the real estate is not divisible in kind and it might be necessary to sell it and divide the proceeds of the sale. It was further alleged that the mother "is in the actual possession of the real estate by way of homestead and dower."

It was prayed that the dower interest of the mother be protected and "that the property, both real estate and personal property, be divided as to value, that a master be appointed to state the account between the brothers, and on the coming in of the master's report, a decree be rendered dividing the property as the interest of the parties may appear, according to the finding of the master, that the interests of the different parties be vested in them, and that the defendant, H. B. Henderson, be enjoined and restrained from interfering with the property and from handling and removing said money, and for costs and all other proper relief."

It will be observed that the complaint contained no prayer for an order to sell the property if a division in kind could not be made, a circumstance of importance in view of the subsequent developments herein recited.

The master was appointed as prayed, and testimony was heard by him, much of which related to the value of the separate tracts comprising the homestead. The testimony heard by the master was reported by a stenographer, and the master made the transcription of this

testimony a part of his report. The first witness whose testimony was heard was Mrs. Henderson, the widow. Much of her testimony related to the manner in which a large sum of money had been accumulated by the brothers in the operation of a dairy on the land in question, as partners. In regard to the partition of the land she testified as follows, putting the testimony in a narrative form.

She wanted to reserve her homestead rights. She wanted the land kept intact as one tract, all of which comprised her homestead, and she did not want it divided, but wanted it kept the way it now is. If the brothers could agree, and each take his part, she would agree to that, but she did not want it sold while she was living, and she wanted to stay there as long as she lived. She wanted each of her sons to have what was right when she was gone, but she did not want it sold while she lived. On her cross-examination she expressed a willingness to have the interest which each son should have determined, but that she did not want to move off the land and did not intend to do so, and that all she wanted was not to be disturbed in her possession. In view of this testimony it cannot well be said that she consented to any order which would disturb her possession, or that she waived her right of homestead.

The master employed a surveyor, who made a survey and plat thereof, dividing the land into two tracts and a finding was made as to the owelty which should be paid to equalize the tracts in value. The master's report contained a description by metes and bounds of the two tracts according to the survey. As to the rights of the widow the master made the following finding and report.

"THE RIGHTS OF CARRIE M. HENDERSON.

"The finding is that she be left undisturbed in the residence and premises now occupied by her, and that the recommendation as to M. A. Henderson being awarded the ownership of the lands of which it is a part, is that such award be subservient to her rights of dower and homestead; that she has rights of dower and home-

stead in the entire 120 acres involved herein and those rights are paramount to the rights of either or both of her sons, and that the award of possession of the tracts to each of them, be subservient to her rights of dower and homestead.''

.Notwithstanding this report of the master, a decree was rendered February 18, 1946, which recites that the widow and both her sons were parties to the suit, and that if the land was not susceptible of a division in kind, it should be sold and the proceeds of the sale divided according to the interests of the parties. It was recited and provided that upon the sale of the property, the interest of the widow should be paid her, and the remainder of the proceeds be divided equally between the sons. It was further ordered:

"That upon the sale of said property as aforesaid and the confirmation of such sale by the court, all the right, title and interest of either and all the parties hereto, including all the dotal and homestead rights of the plaintiff, Carrie M. Henderson, in and to said property, and every part thereof, shall be divested out of them and vested in the purchaser or purchasers. Thereupon, and after execution and delivery of the commissioner's deed, without further order of this court, this court's writ of assistance do issue to the sheriff of Pulaski County, directing him to place said property into the custody of the purchaser or purchasers at such sale.''

No appeal was prosecuted from this decree within the time limited by law.

The commissioner appointed to make the sale published notice thereof, but the sale was not had pursuant thereto, and no sale has yet been had. 'After the expiration of the time within which an appeal could have been taken, Mrs. Henderson filed a motion to vacate the decree, and set it aside. In support of this motion Mrs. Henderson offered to introduce testimony to the effect that she had employed no attorney to represent her, and that she consented to the partition only upon the condition that it be effected without disturbing her possession under her right of ownership. Appellee's at-

torney offered to introduce testimony that he had been authorized by Mrs. Henderson to file the partition suit.

The court declined to hear and pass upon this testimony, being of the opinion that as the decree had become final, through the failure to appeal therefrom, relief could be afforded only by complying with the provisions of § 8248, Pope's Digest, which provides that proceedings for vacating or modifying a judgment after the expiration of the term at which it was rendered, shall be by a complaint verified by affidavit setting forth the judgment or order and the grounds to vacate or modify it, and the defense to the action, if the party applying for the vacation of the decree was the defendant, and that on this complaint a summons should issue and be served, and other proceedings be had as in an action by proceedings at law.

In refusing to hear the offered testimony, and in dismissing the motion to vacate the decree the court stated: "You might take this down: The court dismisses the motion on the ground that final decree was rendered in this cause in February of 1946, and that under the statute the only manner in which the decree can be set aside is by filing a complaint, having a summons issued directed to the other parties in said cause, and have a hearing in court, after they are in court by service of summons."

The attorney for Mrs. Henderson insisted that the decree was void on its face for the reason that the court lacked the power or jurisdiction to order a sale of a homestead for purposes of partition under any circumstances and insisted that he be allowed to file his motion. The court then said: "I can't keep him from filing it, but if he makes a motion I will have to dismiss it. Let me make this suggestion before you go up on this: You know it will be next fall before it will be passed on and if they hold you have to file a complaint you would have to start over. If you have any doubt, wouldn't it be simpler to file a complaint, and you can get service in twenty days."

Mrs. Henderson's attorney insisted that the motion recited that Mrs. Henderson had never concurred in the decree of sale, and that there would have to be a finding on this question of fact, to which insistence the court responded: "There would be a finding if I found you were in court, but I find you are not in court. You can file your suit and get in court in twenty days. We are not going to have any sale pending the determination of her rights. I don't see why you don't, by agreement, dismiss and sell the stuff subject to her homestead and dower." To which suggestion counsel for appellee responded: "We can't sell it that way; we have tried it," and counsel for Mrs. Henderson said: "I don't think you can sell that homestead under any circumstances." As counsel for Mrs. Henderson stood and now stands on that contention, the court dismissed the motion to vacate the decree and from that order is this appeal.

Counsel for appellant is mistaken in his position that a homestead may not under any circumstances be sold for partition, whether by consent or not. In the case of *Hoback* v. *Hoback,* 33 Ark. 399, it was held that when a widow is a party to a suit for partition among the heirs, and fails to claim her homestead right, it is barred by the decree ordering partition. See, also, *Merrill* v. *Harris,* 65 Ark. 355, 46 S. W. 538, 41 L. R. A. 714, 67 Am. St. Rep. 929, *Tipton ex parte,* 123 Ark. 389, 185 S. W. 798. In the case last mentioned it was held that the court was without jurisdiction to sell a homestead when there are unpaid debts. Here there are no minors and no debts, so that it may not be said that the court was without jurisdiction to order a sale for purpose of partition under any circumstances. That order may have been erroneously made, but there was no appeal from it.

The court suggested that appellants' motion be treated as a proceeding under § 8248, Pope's Digest, and that it be heard at a future date, and we think this action was proper. It is true that no summons issued upon this motion as the law requires, but appellee was advised of the motion, was present in court, and resisted the motion and the summons would now serve no useful purpose.

In this view this appeal is premature and the cause will be remanded for a hearing on the motion, which will be designated as a complaint to vacate the judgment, as the court suggested, and if it be found that appellee's attorney was without authority to waive her right of homestead, and that she claimed and did not waive her right, the motion should be sustained, and the partition decree set aside as prayed.

In the case of *Cherokee Construction Co.* v. *Harris,* 92 Ark. 260, 122 S. W. 485, 135 Am. St. Rep. 177, Judge FRAUENTHAL said: "The chief purpose of this constitutional provision (in relation to a widow's homestead) was to secure to the widow and minor children a fixed home during the life of the widow or minority of the children. To secure this object, it was made exempt from sale; so that it cannot be sold to pay the decedent's debts, and it cannot be partitioned, either in kind or for sale. *Trotter* v. *Trotter,* 31 Ark. 145; *Kirksey* v. *Cole,* 47 Ark. 504, 1 S. W. 778; *McCloy* v. *Arnett,* 47 Ark. 445, 2 S. W. 71; *Nichols* v. *Shearon,* 49 Ark. 75, 4 S. W. 167; *Stayton* v. *Halpern,* 50 Ark. 329, 7 S. W. 304; *Burgett* v. *Apperson,* 52 Ark. 213, 12 S. W. 559; *Bond* v. *Montgomery,* 56 Ark. 563, 20 S. W. 525, 35 Am. St. Rep. 119; *Sparkman* v. *Roberts,* 61 Ark. 26, 31 S. W. 742."

It was evidently the view of the court that the motion should be heard when the requirements of the statute as to filing complaint and having service thereon had been met, and he said he would set the hearing "for future trial," to which suggestion Mrs. Henderson's attorney said, "All right," yet he has appealed without having that hearing. It would be unnecessary to file a new complaint as the pleadings and proceedings have already fully developed the issues which the court should hear.

The cause will, therefore, be remanded for a hearing of this motion, and if it be determined either (1) that Mrs. Henderson did not authorize the attorney to file suit in her name, or (2) even if she did, that she had agreed that a division of the land might be made in the event only her right of homestead was preserved and not destroyed, the decree ordering a sale for the purpose of

partition will be vacated as such a decree could be rendered only with her consent, or by a waiver of her right of homestead.

It would have been more seemly in these sons to have waited until their mother's death to have asked partition, a right which could be exercised only with their mother's consent. It is the widow who has the right of homestead, and this is a right individual and indivisible, which cannot be divided or sold for partition except with her consent, and if it is found that consent was withheld, the partition decree should be vacated as prayed.

Appellee insists that authority for the sale of the homestead even without the widow's consent is found in Act 92 in the Acts of 1941 and in the opinion of the cases of *Rockmore* v. *Pembroke*, 208 Ark. 995, 188 S. W. 2d 616, and *Overton* v. *Porterfield*, 206 Ark. 784, 177 S. W. 2d 735. This contention may be disposed of by saying that neither of those cases involved the right to partition a homestead. Act 92 of 1941 amended § 10509, Pope's Digest, which section relates to the partition of oil and gas leases. The case of *Overton* v. *Porterfield*, *supra*, in construing § 10509, held that oil and gas leases owned in joint tenancy, in common, or in coparceny might be sold for development purposes, but we find nothing in Act 92 *supra*, conferring the right to sell a homestead for purposes of partition. If it did, grave doubt would arise as to its constitutionality for the reason that the right of homestead is conferred by the Constitution and may not be destroyed by a statute authorizing its partition. Here only the widow has the right of homestead, the heirs at law having long since attained their majority, Art. 9, § 6 of the Constitution.