## WILMOTH *v.* GOSSETT.

Opinion delivered November 7, 1903.

1. WIDOW—HOMESTEAD.—The fact that a widow at her husband's death owned land in her own right, upon which she and her husband formerly lived, will not preclude her from claiming a homestead in his land which they had occupied as such for many years preceding and up to his death. (Page 596.)

2. SAME—SEPARATE HOMESTEAD.—Const. 1874, art. 9, § 6, providing that "if the owner of a homestead die, leaving a widow, but no children, *and said widow has no separate homestead in her own right*, the same shall be exempt," etc., refers to a homestead selected by the widow in her land after her husband's death, and not to a former homestead on her land which she and her husband had abandoned prior to his death. (Page 598.)

Appeal from Boone Circuit Court.

ELBRIDGE G. MITCHELL, Judge.

Affirmed.

*Crump & Bailey,* for appellants, *S. W. Woods,* of counsel.

The court erred in giving appellee homestead in the lands. Const. 1874, § 6, art. 9; *Ib.* § 3, art. 9; 66 Ark. 385; 25 Ill. 610; s. c. 79 Am. Dec. 350; 80 Ky. 636; 77 Tenn. 545; *Ib.* 523; 23 Cal. 108; 25 Ga. 223; 1 Kan. 648; 42 Ark. 503; 48 Ark. 230.

*J. W. Story,* for appellee.

The 120-acre tract was never the homestead of appellee. Mere temporary residence there did not make it so. 22 Ark. 401; 31 Ark. 466; 57 Ark. 179; 55 Ark. 303; 43 Ark. 547. For requisites of homestead, see: Const. 1874, art. 9, § 4; 22 Ark. 401; 69 Ark. 596;

42 Ark. 175; 31 Ark. 466.   There can not be two homesteads.   29 Ark. 280; 48 Ark. 539; 65 Ark. 251; Rodgers, Dom. Rel., §§ 180, 183; 67 S. W. 578; Thomp., Home & Ex., §§ 225, 245, 246.   The mere ownership by appellee of a place at the time of the death of her husband does not deprive her of the homestead of her late husband.   Const. 1874, § 4, art. 12; 45 Ark. 343; 48 Ark. 232.

BUNN, C. J.   In the Boone county court, at its October term, 1900, Vesta Wilmoth, Harriett Brown, T. H. Gossett, Louisa Murry, Mattie Austin, Mary Childers, and the children and heirs at law of Sarah Marshall, deceased, children and grandchildren of William Gossett, deceased, filed their *ex parte* petition, reciting that their said ancestor had died intestate about the 8th day of July, 1900, leaving surviving him his widow, Mary Ann Gossett and the petitioners, and seized and possessed of about 187 acres of land near the town of Harrison in said county of Boone, describing the same; that his widow, the said Mary Ann Gossett, at the time of her said husband's death, owned in her own right 160 acres of land, and a life estate in 120 acres more, all in said county, and the last named near the town of Harrison.   Prayer that commissioners be appointed and directed to lay off and set apart dower in said lands of her deceased husband, and the same was accordingly done, and the commissioners were ordered to report their action at the next term of said court.

On a subsequent day in said October term, Mary Ann Gossett, the widow of William Gossett, appeared in said court, and asked to be made, and was made, a party defendant to said proceeding, and filed her separate answer.   Upon the petition and answer the probate court held that said respondent was not entitled to the benefit of a homestead in her deceased husband's land occupied by him and herself and family at the time of his death and for several years previously thereto, but that she was entitled to dower in her husband's lands; and commissioners were appointed and directed in accordance with the prayer of the petition; and the said Mary Ann Gossett duly and in due time took an appeal from said judgment to the Boone county circuit court, where, at its January term, 1901, the judgment of the probate court was reversed, the court holding that she was entitled to the benefits of the homestead left by her deceased husband, and thereupon directing dower to be set apart to her in all the lands of her deceased husband, including those claimed by her as a homestead.   From this judgment the petitioner duly and in due time appealed to this court.

The cause was heard in the circuit court on the following agreed statement of facts, to-wit: "We, the undersigned, attorneys for the plaintiffs, as well as the attorneys for the defendant, hereby agree that William Gossett died seized and possessed of the lands mentioned in the transcript; that Mary Ann Gossett was his widow; that he left no minor heirs; that they resided on said land at the time of his death, and for several years prior thereto, as a homestead, and she has not since abandoned it; that the land is contiguous, and worth not exceeding $2500; that the said Mary Ann Gossett owned a life estate in one hundred and twenty acres of land north of Harrison, on which she and said William Gossett had temporarily resided four or five years prior to the time they moved on the homestead on which he died; that said land in which she owned a life estate had dwelling and outhouses, and that most of the land was in cultivation, and it was a place of considerable value, not exceeding $2,400; that, in addition to this, the said Mary Ann Gossett owned 160 acres of land in Boone county, Arkansas, on which there was a dwelling and 35 acres in cultivation; that the last-named place she owned in her own right, having fee-simple title thereto."

The counsel for appellants contend that the widow, in the state of case made out by the agreed statement of facts, is not entitled to the privilege of the homestead left by the husband, contending that, as the widow had lands in said county in her own right, and more than sufficient to constitute a homestead in law, a part of which she and her said husband had occupied as their homestead in the beginning of their married life, she was barred from her claim by the provisions of section 6, article 9, of the Constitution of 1874.

The only question addressed to us for determination is whether the ownership of lands in her own right, and upon which she and her husband lived for some years in their early married life, bars her claim of homestead in his lands, which they had occupied as a homestead for many years next preceding and up to his death.

In either case, of homestead in the wife or in the husband, the questions of dedication, occupation, and abandonment are important to be considered. In the case of the husband he can not be made to assert a homestead right against his will. There is no good reason for the application of a different rule in the case of the wife, for what is to be considered the homestead of any one depends primarily upon his or her intention in regard thereto, there

being no homestead growing out of construction merely; all depending upon the facts in each case, to prove the intention of the owner or occupier of the land.

According to the agreed statement of facts, which is the evidence in this case, at one time immediately succeeding their marriage, they lived as husband and wife upon the portion of the wife's land in which she owned only a life estate, the 120 acres described in the pleadings, where there were buildings and outhouses, usually making up to a greater or less extent the comforts and conveniences of a home.

Section 3, art. 9, of the Constitution, reads thus: "The homestead of any resident of this state, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court or sale under execution or other process thereon," etc. In construing the language of this section, this court, in *Thompson* v. *King,* 54 Ark. 11, said: The object of this section "is to protect the home of the married and the family against seizure or sale, and no reason can be advanced why the land of the wife occupied as the home of the husband and his family should not be protected as well as the land of the husband should be when it is the homestead." There is nothing, however, in the books, so far as we have been able to discover, which gives a homestead right to the wife, even on her own land, when she is not occupying the same as such, but is living on land with her husband belonging to and selected by him as the family homestead. It is said also in the decision cited that "the homestead is intended for the benefit of the family." It can not, therefore, be made use of to disrupt and disorganize the family, as would be the case where the homestead of the wife was in one place and that of the husband in another. There can not be two homesteads for this legal unity at one and the same time. Thompson, Homesteads, § 2251.

Moreover, it is necessarily implied in the language of that decision that there must be a joint occupancy of the husband and wife to fix the character of a homestead upon the wife's land. It follows that the homestead ceases when the husband no longer resides in the home on the wife's land, but has selected a homestead on his own land—has abandoned the homestead on the wife's land. The husband's home must be the wife's; she must follow him, and not the reverse, is the legal status. He is the controlling spirit in this legal unity, and has a right to select, and also to abandon, the home at his will. Therefore when they left the home

on the wife's land, and went to and ever after during their married life occupied as a homestead a portion of the husband's land, the homestead on his wife's land ceased to be their homestead, was abandoned as such, and there is nothing in the record that shows or even hints at the *animus revertendi,* but all appears to the contrary.

This leads us to the consideration of the ruling of this court in construing section 6 of the same article of the Constitution, which reads: "If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life."

From what has been said before, it is inconceivable that the wife could be the owner of a homestead on her own lands and in her own right while she and her husband were living together as such for so many years, and up to the very moment of his death, on the homestead owned by him on a part of his own lands. The separate homestead referred to in the section of the Constitution just quoted is not the separate homestead of the wife, but of the widow; that is, the separate homestead of the widow selected by her on her own lands after the death of her husband (for she is not the widow until then).

Such was the case presented in *Davenport* v. *Devenaux,* 45 Ark. 343, where the widow, after residing at the family homestead left by the husband on his own land for about a year after his death, then abandoned the same, and established her homestead on lands owned by her in her own right, and continued to occupy the same. This court held in that case (which was a case arising, it is true, under the corresponding section of the Constitution of 1868, but one expressed in the identical language of that contained in our present Constitution) that the widow, having thus abandoned the family homestead left by the husband, and established a homestead for herself on her own lands, was barred from claiming the homestead rights of the former. In other words, the section was construed to have reference to a separate homestead of the widow, established by her as a widow; that is, after, and not before, the death of her husband. Under the agreed statement of facts, a separate homestead on the wife's land could not have existed. This being true, it follows that the circuit court did not err in its rulings, for the widow has not sought to establish a homestead for herself on her own lands since the death of her husband, but dis-

claims such homestead, and claims her homestead rights in the homestead owned by her husband at his death, and occupied with him up to that time by herself and the family.    Affirmed.