STUCKEY *v.* HORN.

Opinion delivered January 28, 1918.

1. HOMESTEAD—CLAIM OF WIDOW AND CHILDREN.—The homestead right is a derivative one, and the widow and minor children have the homestead which the husband and ancestor could have claimed.

2. HOMESTEAD—GRANT OF EASEMENT CUTTING SAME INTO SEGMENTS.— The homestead right to the whole of a tract of agricultural land is not destroyed by the grant of an easement to a railway company over the same, which cuts the original tract into two segments.

3. HOMESTEAD—RURAL CHARACTER.—Land used solely for agricultural purposes, and never platted into lots, although contiguous to an unincorporated town, *held* to constitute a rural homestead.

Appeal from Saline Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*Ben F. Reinberger,* for appellant.

The leases are void, and should be set aside. The homestead was urban in a town or village, and consisted of one acre. The balance of the land should be partitioned among the heirs. Kirby's Digest, §§ 3791, 3899, 3900; 20 Ark. 56; 71 Ill. 568; 21 *Id.* 48; 113 Wis. 399; 86 N. W. 677; 32 Tex. Civ. App. 18; 119 U. S. 680; 151 Ala. 561.

*W. R. Donham,* for appellees.

The whole tract was a rural homestead, and could not be partitioned. Const., art. 9, § 6; Kirby's Digest, § 4309; 92 Ark. 260; 31 *Id.* 145; 47 *Id.* 504; 47 *Id.* 445; 49 *Id.* 75; 50 *Id.* 329; 52 *Id.* 213; 56 *Id.* 534; 61 *Id.* 26.

The leases were legal. 61 Ark. 26; 82 *Id.* 514; 125 *Id.* 291; 123 *Id.* 189.

The widow and children were entitled to the whole tract as a homestead, and could rent or lease it. 53 Ark. 400; 95 *Id.* 246; 93 *Id.* 353.

SMITH, J. One Chris Stuckey died intestate on December 26, 1909, and left surviving him his widow and seven minor children. William Stuckey was the oldest child and he reached his majority on June 29, 1916. Thereafter William Stuckey brought suit for the parti-

tion of certain lands described in his complaint. He alleged therein that the widow, for herself and as guardian for the minor children, had executed leases of the land described to the Bauxite Mercantile Company, a copartnership, and to the American Bauxite Company. That the lease to the American Bauxite Company was a mineral lease under which that company, if it desired to mine the bauxite, might do so by paying a stipulated royalty, but otherwise should pay an annual rental of $50. It was further alleged that the land was wild and unimproved and that the leases were not for improvements but that said leases were made with the guardian for the purpose of creating an exclusion of business near and adjacent to the bauxite mines.

The lessees were made parties, and there was a prayer that these leases be canceled and the land partitioned.

It was alleged in the answer, and the court found the facts so to be, that the land constituted a homestead and that the leases were valid and that the property was not subject to partition.

The plaintiff admitted the existence of a homestead right in the land in question; but the nature and extent of this homestead are the controlling questions in the case. The plaintiff alleged that the homestead was an urban one, and should be limited to one acre, but that, if it were held to be a rural homestead, the entire tract should not be included for the reason that ten or fifteen acres of the land were not contiguous to the remainder and had not been claimed or considered by plaintiff's father as a homestead in his lifetime.

The tract of land contains about eighty acres, and the testimony shows that the Bauxite & Northern railroad crosses the land and segregates a wedge-shaped piece of the land, containing about ten or fifteen acres, from the remainder, and it is said that the segregated piece is not a part of the homestead. A right-of-way one hundred feet was secured by condemnation proceeding in 1907 and in the judgment it was provided that the right-of-way "be

vested in the Bauxite & Northern Railway Company, its successors and assigns, as a right-of-way, to be held and enjoyed by it, its successors and assigns, so long as it is held by it, or them, or either of them, as and for a right-of-way.''

(1)　The homstead right is a derivative one, and the widow and the minor children have the homestead which the husband and ancestor could have claimed. And, if it be true that the eighty-acre tract of land constituted the homestead of Chris Stuckey before the condemnation proceedings, the character of the portion not taken by that proceeding remained unchanged thereafter. The segments thereof were contiguous within the requirement of the law that the land claimed as a homestead be contiguous, and this is unquestionably true under the facts of this record, for an easement only was condemned by the railway company, and the land owner was left with the fee title to the entire body of land.

(2)　In the case of *McCrosky* v. *Walker*, 55 Ark. 303, it was held that the homestead can not consist of two noncontiguous tracts of land; but, in the case of *Clements* v. *Crawford County Bank*, 64 Ark. 7, it was held that a homestead could be claimed in two parcels of land which corner with each other. It was said in that case, and has several times been repeated, that the homestead law should be liberally construed to effect its benign purpose, and any such construction would preclude the holding that the lands here involved are not contiguous. In 13 R. C. L., in the article on Homestead, at section 41 thereof, it is said:

''A homestead right to the whole of a tract of agricultural land is not destroyed by a grant of a right-of-way through it to a railroad company, a part of which is an absolute grant, and partly the creation of an easement; nor does such conveyance operate to so divide the tract as to make the land only on one side of right-of-way subject to the homestead right.''

Some testimony was offered to the effect that Chris Stuckey did not claim the entire eighty acres as his home-

stead, and that he had planned to improve the smaller portion of land by building rental houses thereon. This was never done, however, and there was other testimony to the effect that Chris Stuckey regarded the entire eighty-acre tract as his homestead. We can not say that the finding that the entire eighty-acre tract was claimed as a homestead, is against the preponderance of the evidence. Chris Stuckey occupied a portion of the land as a home. He might have claimed the entire eighty-acre tract as his homestead. It would have been to his advantage to do so, and the presumption arises that he did so, and the evidence does not overcome this presumption and the finding of the court below.

(3) The close question in the case is whether the land was a rural or an urban homestead. The testimony shows that the land was situated adjacent to a village which had once been known as Perrysmith. That the presence of bauxite in adjoining lands was discovered, and, when these lands were purchased and acquired by the American Bauxite Company, and, when that company began to mine the bauxite, the name of the village was changed to Bauxite. This village was never incorporated, but it was shown to be the site of a school having an enrollment of about six hundred pupils, and there were two churches, a bank, a drug store, two mercantile houses, a barber shop, a butcher shop and a number of residences in this village. It appears that the name Bauxite was given, not only to the village, but to the properties operated by the bauxite company, which consisted of about five thousand acres of land, and that about three thousand people lived on various parts of these lands, and the principal employment of the residents consisted in labor performed for the bauxite company. It was shown that none of the children attending the school lived on the Stuckey lands. Stuckey had, himself, sold a portion of his original tract of land to the bauxite company, which company had built five houses on the land so purchased. The land in controversy was not in the village of Bauxite, but adjacent to it. Only one road ran across the land,

and the property had never been platted into lots and blocks. The land was a farm, and only a portion thereof in cultivation. The case of *Spaulding* v. *Haley,* 101 Ark. 296, presented a very similar question under the facts of that case, and in the syllabus there it is said:

"Where land jutted into the outskirts of a village, but was used entirely for agricultural purposes, although part of it had been divided into lots by a prior owner without making a plat or subdivision of it, a finding of the chancellor that it constituted a rural, and not an urban, homestead, will not be set aside."

The land in this litigation had not even been divided into lots. Under this test, we think the land a rural homestead, and not an urban one, and the widow and minor children are not, therefore, limited to a claim of one acre, but may claim the entire eighty-acre tract as a homestead.

The question of waste passes out of the case under the undisputed evidence. It is shown that numerous and exhaustive tests were made for bauxite, but none was found in commercial quantities, and no attempt was made, or is being made, to operate any mines on the property. Being a homestead, the land is not, therefore, subject to partition, and, as the plaintiff has attained his majority he has no right to disturb the possession of the widow and minor children, although that possession is held through the tenants of the widow and the infant children. Article 9, section 6, Constitution 1874; *Cherokee Construction Co.* v. *Harris,* 92 Ark. 260, and cases there cited.

Decree affirmed.