BRADLEY v. HUMPHREYS.

4-3884

Opinion delivered June 17, 1935.

T. L. McHaney and C. A. Cunningham, for appellant.
C. M. Buck, for appellees.

McHANEY, J. Appellant is the receiver for the First National Bank of Blytheville, Arkansas, hereinafter called the bank. Appellee, Mrs. Humphreys, is the widow of the late Louis Humphreys, who died in California in 1928. The other appellee, Mrs. Myrtle Sheeley, is the sister of Mrs. Humphreys.

Mrs. Humphreys and her husband resided in Blytheville until 1924, when they went to California on account of Mr. Humphreys' health. At that time he was the owner of 21 shares of stock in the bank of the par value of $2,100. He was also the owner of a homestead in Blytheville, the home in which they lived prior to their depart-

ure for California. After the death of Mr. Humphreys, this stock and the homestead were treated as the property of his widow, but just how she acquired title thereto is not shown. On November 30, 1930, the bank ceased to operate for a time. It was reorganized and reopened for business in February, 1931. In the reorganization proceedings, the stock of the bank was reduced by one-third. The Humphreys stock was reduced from 21 shares to 14 shares, the old stock being surrendered, and the new stock issued in the name of Mrs. Louis Humphreys. On October 31, 1931, the bank again closed its doors, and was placed in the hands of appellant Bradley as receiver for liquidation. On November 27, 1931, Mrs. Humphreys mailed to the circuit clerk in Blytheville a deed to said homestead, conveying same to her sister, Mrs. Sheeley, for a consideration expressed in the deed of $10. The deed and acknowledgment were dated October 1, 1931. The notary testified that the actual date of the acknowledgment and the signature to the deed was November 5, 1931.

Appellant brought this action against appellees to recover judgment against Mrs. Humphreys for $1,400, the assessment of 100 per cent. levied, by the Comptroller of the Currency, on February 15, 1932, against her and all other stockholders of the bank, and for cancellation of the deed from her to her sister, Mrs. Sheeley, as having been made in fraud of creditors, and particularly in fraud of said stock assessment.

Trial resulted in a decree for appellant for $1,400 against Mrs. Humphreys with interest. The complaint, in so far as it related to Mrs. Sheeley and the cancellation of the conveyance of the real property in Blytheville to her, was dismissed for want of equity, because the court found that the homestead had not been abandoned. From the latter part of this decree this appeal is prosecuted.

Two questions are raised by this appeal: (1) Was the homestead abandoned? (2) Is the finding of the trial court that it had not been abandoned against the preponderance of the evidence?

(1) Our Constitution, § 6 of article 9, makes the following provision with reference to the owner of a

homestead who dies leaving a widow and no children, as is the fact in this case: "If the owner of a homestead dies, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life." Then follows the provision relating to such an owner who dies leaving children. It is undisputed in this record that at the time Louis Humphreys removed from Blytheville to California, he was the owner of a homestead. It is a disputed question of fact as to whether he went to California temporarily for his health or permanently for business reasons. As stated in *Butler* v. *Butler,* 176 Ark. 126, 2 S. W. (2d) 63: "It is the rule of law in this State, announced by many decisions of this court, that the question of whether there has been an abandonment of a homestead once established is almost entirely a question of intent on the part of the homestead owner so to do. In other words, in order to constitute an abandonment of a homestead, the owner must leave it with the intention of renouncing and forsaking it, or leaving it never to return. The law does not require continuous occupation of the homestead to continue it as such." We there quoted from *Euper* v. *Alkire & Co.,* 37 Ark. 283, as follows: "When a homestead right has once attached, a continuous actual occupation is not indispensable for its preservation. It is well settled by the authorities that a removal from the homestead for a temporary purpose, or with the intention of returning and again occupying it, is not such an abandonment as will forfeit the homestead right." And in *Gillis* v. *Gillis,* 164 Ark. 532, 262 S. W. 307, quoted in the Butler case, we said: "The question of whether one who removes from his homestead has abandoned same is one of intention, which must be determined from the facts and circumstances attending each case."

Here there is ample evidence to support the court's finding that Louis Humphreys did not leave his homestead and go to California for the purpose of abandoning same. It is testified to by the appellees that he left because of the condition of his health, and frequently

talked of and prepared for returning, but, by the advice of his physician and on account of the condition of his health, he was constrained to remain longer. There is some evidence contradicting this testimony, but we are of the opinion that the preponderance of the evidence supports the finding that there was no abandonment. At least we cannot say that the finding is against the preponderance of the evidence. It is conceded that he did not acquire another homestead in California.

By the provisions of the Constitution above quoted, the only qualification of the widow's right to enjoy the rents and profits of the homestead during her natural life is the clause, "if the owner of the homestead dies, leaving a widow, but no children, and said widow has no separate homestead in her own right." Here, as we have seen, Mr. Humphreys died the owner of a homestead, leaving a widow and no children, and the widow had no separate homestead in her own right. She therefore succeeded to the homestead right of her husband. As said in *Colum* v. *Thornton*, 122 Ark. 287, 183 S. W. 205, quoted in the Butler case, *supra*: "Our Constitution gives the homestead to the widow for life, without any restrictions. It is the settled policy in this State that laws pertaining to the homestead right of the widow and minor children shall be construed liberally in favor of the homestead claimants." And we have many times held that occupancy of the homestead by the widow is not necessary to her right to enjoy the rents and profits, and this, too, even though she marries again and removes to the homestead of her husband. See *Butler* v. *Butler, supra,* and *Colum* v. *Thornton, supra*.

In this view of the case, it becomes unimportant to discuss the conveyance of Mrs. Humphreys to her sister, for creditors have no right to complain of the conveyance of a homestead. We find no error, and the decree is accordingly affirmed.