Bryan MONROE *v.* Sleetie MONROE

5-5539                                    465 S. W. 2d 347

Opinion delivered April 12, 1971

*W. F. Denman, Jr.,* for appellant.

*John L. Wilson,* for appellee.

J. Fred Jones, Justice. This appeal involves a widow's rights in the homestead of her deceased husband and the question is whether she has abandoned it.

Sleetie Monroe lived with her husband, W. E. Monroe, on his rural homestead near Hope, in Hempstead County, Arkansas, until his death in November, 1952. Mr. Monroe left as his sole surviving heir Bryan Monroe, who was an only son by a previous marriage. Mrs. Monroe continued to live on the homestead until June, 1953, when she rented out the house on the homestead and moved to Hope where she has resided in different houses purchased by her since moving from the homestead. Bryan Monroe instituted the present action in the Hempstead County Chancery Court alleging that Mrs. Monroe has abandoned the homestead and he prayed for an accounting and award of damages for waste in the cutting and sale of timber from the homestead land. The chancellor found that Mrs. Monroe had not abandoned the homestead and entered a decree accordingly. On appeal to this court Bryan Monroe relies on the following points for reversal:

"That the appellee has in fact abandoned her homestead in the subject land, by living elsewhere for these many years, allowing the house and out building to deteriorate, by acquiring three other homes during her absence.

That appellee has in law abandoned her homestead in the subject land by leaving said land without a fixed intention to return to same, without maintaining a fixed intention to return to same and without possessing a fixed intention to return to same at the time of trial."

We are of the opinion that the chancellor's decree is not against the preponderance of the evidence and should be affirmed.

Article 9, § 3 of the Constitution of 1874 reads as follows:

"The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process

thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity."

This section of the constitution applies to either the wife or husband when married, and to either of them, or to anyone else who is the head of a family, whether married or not. Consequently, any resident of this state of either sex, who is married, or who is the head of a family, is entitled to the exemption of a homestead under the constitution. *Thompson* v. *King*, 54 Ark. 9, 14 S. W. 925.

In addition to a married woman's right to homestead exemption, she has certain constitutional rights as a widow in the homestead of her deceased husband as set out in § 6 of Article 9 of the constitution, which is as follows:

"If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life, provided that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits till each of them arrives at twenty-one years of age—each child's right to cease at twenty-one years of age—and the shares to go to the younger children, and then all to go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate."

The case of *Butler* v. *Butler*, 176 Ark. 126, 2 S. W. 2d 63, involved the question of abandonment of a homestead; first by the husband, and then by the widow after her husband's death. In that case, as in the case at bar,

the litigation was between children of the deceased husband by a first marriage and their stepmother. In the *Butler* case John Butler had established a rural homestead in Logan County on which there was located a coal mine. In 1916 he moved with his family to Crawford County where he continued to reside until his death in 1918. After Mr. Butler's death, his widow went to Fort Smith to live where she purchased a home for herself and minor children in order to obtain the advantage of better schools for the children and employment for herself. One of the children by the previous marriage administered his father's estate and after winding up the administration, he turned the possession of the Logan County lands back to his stepmother and she continued to receive the rents and proceeds from both the farming operations and the mining of coal.

The husband of one of the Butler heirs by the first marriage brought the abandonment of the homestead into issue and the chancellor found that John Butler had not abandoned his homestead in Logan County by his removal to Crawford County, and that neither had the widow abandoned the Butler homestead in Logan County. The *Butler* decision distinguishes between an acquired homestead and the rights of a widow in her deceased husband's homestead; and the *Butler* case so clearly sets out the law applicable to the case at bar, we feel justified in quoting at length from *Butler* as follows:

"The next question to be determined is whether John Butler abandoned his homestead in his lifetime. It is conceded by all parties that the land in controversy was his homestead until the fall of 1916, when he removed to Crawford County, but it is contended by appellants that, by such removal, he abandoned his homestead. It is not contended that he acquired a new homestead after his removal to Crawford County, and before his death. It is the rule of law in this State, announced by many decisions of this court, that the question of whether there has been an abandonment of a homestead once established, is almost entirely a question of intent on the part of the homestead owner so to do. In

other words, in order to constitute an abandonment of a homestead, the owner must leave it with the intention of renouncing and forsaking it, or leaving it never to return. The law does not require continuous occupation of the homestead to continue it as such. As was said in one of the earlier cases before this court, *Euper* v. *Alkire & Co.*, 37 Ark. 283: 'When a homestead right has once attached, a continuous actual occupation is not indispensable for its preservation. It is well settled by the authorities that a removal from the homestead for a temporary purpose, or with the intention of returning and again occupying it, is not such an abandonment as will forfeit the homestead right.' And in that case the court quoted with approval from *McMillan* v. *Warner*, 38 Tex. 410, as follows: 'The question of abandonment is almost exclusively a question of intent, since no legal abandonment can occur without a fixed intent to renounce and forsake, or to leave never to return; and to abandon a homestead, a party must forsake and leave it with the intent never to return to it again as a homestead.'

In the more recent case of *Gillis* v. *Gillis*, 164 Ark. 532, 262 S. W. 307, this court said: 'The question of whether one who removes from his homestead has abandoned same is one of intention, which must be determined from the facts and circumstances attending each case.'

A temporary removal from a homestead for business purposes does not constitute an abandonment. In this case it is shown that Mr. Butler, when he removed to Crawford County, went there to cultivate bottom lands, by which he thought he could earn sufficient money to pay off the mortgage on his homestead; that he rented his homestead for one year only for farming purposes; that he refused to sell same to persons who offered to purchase. It is also shown by a number of witnesses that he expressed, on many occasions, his intention of returning to his home in Logan County, and these expressions of intention in this regard continued up

to the very day of his death. While there is some conflict in the evidence regarding the question of his intention, we do not find that the chancellor's finding is against the preponderance thereof, and we therefore hold with the chancellor, that John Butler did not abandon his home in his lifetime.

The next question for determination is whether his widow, the appellee, Mrs. A. V. Butler, abandoned same. Section 6 of article 9 of the Constitution of 1874 reads as follows: * * *

The widow did not have a separate homestead in her own right at the time of her husband's death, and she also had minor children. Therefore, under the plain provision of the Constitution, the homestead, of her husband became hers for life, exempt from any debts, except the mortgage indebtedness, together with the rents and profits therefrom, to be shared by her and her minor children until they reach the age of twenty-one years. She could not abandon the homestead so as to be effectual against the minor children, and her act in purchasing a home in Fort Smith for the purpose of supporting and educating her children there, does not constitute an abandonment. The only qualification of her right to enjoy the rents and profits of the homestead during her natural life, contained in this section of the Constitution, is, 'if the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right.' Here there are children, and she had no separate homestead in her own right at the time of the death of her husband. In such a case the acquisition of a homestead in her own right, after the death of her husband, does not constitute an abandonment of her husband's homestead so as to deprive her of the rents and profits thereof during her natural life. As was said in the case of Davis v. Neal, 100 Ark. 399, 140 S. W. 278, L. R. A. 1916A, 999: 'It is the settled policy of this court that homestead acts are remedial, and should be liberally construed to effectuate the beneficent purposes for which they are in-

tended.' And in the case of *Colum* v. *Thornton*, 122 Ark. 287, 183 S. W. 205, this court said:

'Our Constitution gives the homestead to the widow for life, without any restrictions. It is the settled policy in this State that laws pertaining to the homestead right of the widow and minor children shall be construed liberally in favor of the homestead claimants.' In this same case the court further said: 'Upon the death of her first husband, a life estate vests in her in his homestead, and she has the right to lease it and receive the rents from it, subject, of course, to the rights of her minor children to share same with her until each of them arrives at the age of twenty-one years; and we do not think she forfeits her homestead by a second marriage and removal to the homestead of her second husband.'

Again, in the same case, it is said: 'The general rule is that a remarriage by a widow will not operate to destroy the homestead character of a home left to her and her children by a former husband. Our Constitution does not require a widow to occupy the homestead. There is nothing in it to indicate that the framers intended that the marriage of a widow and her going to her second husband's homestead and occupying it with him should work a forfeiture of her previously existing legal rights. In short, there is nothing in our Constitution to indicate that the right of homestead of a widow should terminate, should she remarry and go to live with her husband on his homestead; and we do not think such an act on her part destroys the homestead character of a then existing homestead of herself and her children by her former husband.'

The effect of this holding is that a widow does not destroy her homestead right in her husband's estate by the acquisition of another home in her own right, for her own conveniences and purposes and that of her minor children. We therefore hold against the contention of appellants in this regard.

The final contention of appellants for a reversal of the case is that there had been an abandonment of the mining operations at and after the death of John Butler, that constitute the leasing thereof by Mrs. Butler practically the same as opening a new mine. This contention must also be decided against appellants. It has been held by this court that coal underlying a homestead is a part thereof, and cannot be sold for the payment of the debts of the decedent's estate, but is protected therefrom the same as the homestead is protected. *Russell* v. *Berry,* 70 Ark. 317, 67 S. W. 864.''

In the case at bar Mrs. Monroe testified that at the time of her husband's death, the cultivable land on the homestead had been permitted to grow up in brush, and that after his death she had the brush removed and the land planted to pine seedlings. She testified that she had harvested timber twice from the land through selective cutting, and the chancellor found that the truth of this evidence was borne out by previous orders of the Hempstead County Probate Court authorizing such procedure.

Mrs. Monroe further testified that she left the homestead soon after her husband's death and went to live with her sister and her sister's husband in Hope because they feared for her safety living alone on the homestead, and because she desired and obtained self-employment as a practical nurse in Hope. She testified that it has been, and still is, her intention to return and live on the homestead when she is no longer able to work in Hope. This avowed intention is borne out in the testimony of Mrs. Monroe's sister, who lives with her, and there is no evidence in the record to the contrary.

In the chancellor's findings of fact he recites that after the hearing Mrs. Monroe, through her solicitor, announced her intention of applying the money she had received through the harvest and sale of timber from the homestead, to the making of specified improvements to the residential buildings still on the homestead. The chancellor included in his decree orders pertaining to the

carrying out of these announced intentions and Mrs. Monroe has not appealed from this portion of the decree.

We are of the opinion that the decree of the chancellor is not against the preponderance of the evidence in this case, and that it should be affirmed.

Affirmed.