Nan B. SULCER *v.* NORTHWESTERN
NATIONAL INS. CO.
(of Milwaukee, Wisconsin)

77-317                                          566 S.W. 2d 397

Opinion delivered June 5, 1978
(In Banc)

584

*Killough & Ford,* by: *Robert M. Ford,* for appellant.

*Rieves, Rieves & Shelton,* for appellee.

CONLEY BYRD, Justice. Appellant Nan B. Sulcer, in her capacity as personal representative of the estate of her deceased husband, misapplied the funds belonging to the estate. Appellee Northwestern National Insurance Company of Milwaukee, Wisconsin, as the surety on appellant's bond, Ark. Stat. Ann. § 62-2211 (Repl. 1971), after making good appellant's defaults, obtained a judgment against her in the amount of $25,333.33. The trial court ruled that appellant's property rights (dower rights) in a house and lot located at 941 Cherry Street in Forrest City, Arkansas, were subject to the judgment lien, notwithstanding appellant's claim of a widow's homestead exemption, Ark. Const. Art. 9, § 6. Appellant appeals raising the issues hereinafter discussed.

The record shows that, in a proceeding between appellant and her husband's creditors, the probate court on January 26, 1976, upheld appellant's homestead exemption as to the house and lot in question. In so doing the probate court stated:

> "IT IS, THEREFORE, BY THE COURT CONSIDERED, ORDERED AND ADJUDGED that the house at 941 Cherry Street be, and it is hereby declared the homestead of Clyde Sulcer, and is free from the claims, executions and attachments of the creditors of Clyde Sulcer, deceased; that the Court makes no ruling as to whether any creditor may have a specific lien against any possible right, title, or interest of any heir and/or devisee in the Cherry Street property."

The record also shows that appellee satisfied the defaults of appellant on September 13, 1976, and that appellee did not obtain its judgment against appellant until June 26, 1977.

Our cases consistently hold that the burden of proving res judicata is upon the person asserting the bar of the former judgment, *Hurst v. Hurst,* 255 Ark. 936, 504 S.W. 2d 360 (1974), and *Southern Farmers Assn., Inc.* v. *Wyatt,* 234 Ark. 649, 353 S.W. 2d 531 (1962). Furthermore, it was held in *Randolph v. Nichol,* 74 Ark. 93, 84 S.W. 1037 (1905), that questions expressly reserved by a decree are not concluded thereby. On

the record before us it is at once obvious that the record does not support appellant's contention that the probate court's allowance of the homestead exemption against the claims of her husband's creditors is res judicata of her homestead claim as against a personal judgment against her for defaults in her capacity as personal representative of her husband's estate.

The homestead exemption with respect to real property is set forth in Article 9 of our Constitution, as follows:

"§ 3. *Homestead exemption from legal process — Exceptions.* — The homestead of any resident of this State who is married or the head of a family shall not be subject to the line of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity.

. . .

§ 6. *Rights of widow and children.* — If the owners of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life, provided that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits till each of them arrives at twenty-one years of age — each child's right to cease at twenty-one years of age — and the shares to go to the younger children, and then all to go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate."

We note that Article 9, § 6, *supra,* with respect to the rights of a widow, only provides that "the same shall be exempt" but the term "exempt" is not otherwise qualified. However, since the section is prefaced with "If the owner of a homestead die, . . . ," the phrase that "the same shall be exempt" must refer back to the exemption set forth in Section 3,

*supra,* which excepts judgments against executors and administrators from the homestead exemption. See *Stuckey v. Horn,* 132 Ark. 357, 200 S.W. 1025 (1918), which holds that the homestead right of the widow is a derivative one and that widow has the homestead which the husband could have claimed. Thus, it follows that the exemption set forth in Section 6, *supra,* is no greater than the exemption set forth in Section 3, *supra.*

The appellant argues that the homestead awarded under Section 6, *supra,* is the homestead of the deceased husband, not appellant, and since the husband was not indebted as an executor or administrator, the property must be held exempt from legal process under Section 3, *supra.* We cannot agree with appellant that the homestead exemption runs in favor of a dead person. The homestead exemption in Section 3 applies only to a "resident of this State who is married or the head of a family." Needless to say, the language of the Constitution speaks in the present tense in describing the persons entitled to a homestead exemption. Consequently, we find no merit in this contention.

The homestead exemption is neither an estate nor a vested interest. The homestead right is only an exemption from legal process. Consequently, the homestead right of appellant is not property upon which an execution may be levied. However, in so far as appellant has a dower right in the property, the trial court correctly held that the homestead exemption Article 9, § 6, *supra,* did not prevent appellee from causing a writ of execution to be levied upon the dower interest. What benefits the husband's creditors may receive from the affirmation of the trial court's decree is not an issue before us on this appeal.

Affirmed.

George Rose Smith and Hickman, JJ., concur.

Fogleman, J., dissents.

John A. Fogleman, Justice, dissenting. This is a dissenting opinion largely because I simply cannot understand how a judgment can be affirmed when the end result of the opinion, as I read the last paragraph, actually sustains appellant's argument that, as stated in her point II for rever-

sal, "The exception in Article 9, § 3 of the Constitution of Arkansas does not apply to the appellant and the estate of Clyde Sulcer, deceased, is entitled to the homestead exemption. The court erred in failing to so hold." It is also a dissenting opinion since the language leading up to the concluding paragraph seems to be either inconsistent with that paragraph or dictum, and I cannot agree with that language. One further reason it is a dissenting opinion is that I do not agree that the trial court ruled that appellant's property rights (dower rights) were subject to the lien. The complaint contained an allegation that appellee was entitled to levy execution upon the homestead property located at 941 Cherry Street. In the answer appellant pleaded res judicata and the homestead exemption. The dower rights were never put in issue. The memorandum findings of the chancellor were that appellee was entitled to levy execution against the homestead property.

The court's judgment stated that it was a lien against appellant's *interest* in said property and that the property was not immune from execution by reason of Art. 9, § 3 of the Constitution of Arkansas. It was adjudged that appellee was entitled to levy execution on defendant's interest in said property "free and clear of any homestead exemption." How the mandate of this court can be written as an affirmance of that judgment is a puzzle I can't solve. I disagree with the quoted language in that judgment, which is the only point in issue on this appeal and I disagree with the language of the majority opinion on the subject of homestead except for the last paragraph.

I would first point out that, under our constitution, Nan B. Sulcer did not have a homestead in the property involved in her own right. Hers was a derivative right in the homestead of her deceased husband. It is quite clear that a wife may have a homestead in her own right in her own property, and that when she does, it comes within the purview of Art. 9, § 3 of the Constitution of Arkansas. *Gibson v. Barnett,* 75 Ark. 205, 87 S.W. 435. Art. 9, § 6 of the Constitution recognizes that a widow may have a homestead in her own right. When she does, she has no right to the husband's homestead by the plain language of the statute, i.e., if she selects a homestead on her own property after the death of her husband. *Bruce v. Bruce,* 176 Ark. 442, 3 S.W. 2d 6; *Wilmoth v. Gossett,* 71 Ark.

594, 76 S.W. 1073; *Thompson* v. *King*, 54 Ark. 9, 14 S.W. 925. In *Bruce*, the difference between the homestead of the wife and the homestead of the widow is emphasized. See also, *Stone* v. *Stone*, 185 Ark. 390, 47 S.W. 2d 50, where it was held that a wife could have rights in the homesteads of two husbands who predeceased her. We clearly recognized rather recently this distinction in homestead rights under §§ 3 and 6 of Art. 9 in *Monroe* v. *Monroe*, 250 Ark. 434, 465 S.W. 2d 347, after first quoting § 3 verbatim, we said:

> This section of the constitution applies to either the wife or husband when married, and to either of them, or to anyone else who is the head of a family, whether married or not. Consequently, any resident of this state of either sex, who is married, or who is the head of a family, is entitled to the exemption of a homestead under the constitution. *Thompson* v. *King*, 54 Ark. 9, 14 S.W. 925.

> In addition to a married woman's right to homestead exemption, she has certain constitutional rights as a widow in the homestead of her deceased husband as set out in § 6 of Article 9 of the constitution, which is as follows:

We then quoted § 6 in full.

The homestead involved here is that of appellant as widow of Clyde Sulcer, deceased and not in her own right, and the fact that she stipulated that the land in question was "the homestead of the defendant" certainly does not convert the homestead into one owned in her own right, instead of her homestead as widow of Clyde Sulcer. The homestead of the widow in the lands of her deceased husband is also "her homestead." See *Smart* v. *Murphy*, 200 Ark. 406, 139 S.W. 2d 33; *Gill* v. *Dunn*, 196 Ark. 1178, 116 S.W. 2d 612; *Murphy* v. *Graves*, 170 Ark. 180, 279 S.W. 359. It was stipulated that the property was acquired by Clyde Sulcer and that title remained in his name until his death. The probate court had declared the property to be the homestead of Clyde Sulcer.

Appellant's homestead in her husband's lands was subject to the lien of such judgment or decree as might be rendered against *him* as an executor or administrator for moneys collected by him, but not to a judgment against appellant for

moneys collected by her as a personal representative. See Art. 9, § 3. The rights of the widow are not covered, or even mentioned in that article.

The rights of the widow are derivative. *Jordan* v. *Jordan*, 217 Ark. 30, 228 S.W. 2d 636; *Cole* v. *Sparks*, 205 Ark. 937, 172 S.W. 2d 20; *Stuckey* v. *Horn*, 132 Ark. 357, 200 S.W. 1025; *Spalding* v. *Haley*, 101 Ark. 296, 142 S.W. 172. Mrs. Sulcer had the right to the homestead her husband could have claimed, subject to the same qualifications. *Stuckey* v. *Horn*, supra; *Spalding* v. *Haley*, supra; *Cole* v. *Sparks*, supra. Her own rights are governed by Art. 9, § 6, not by Art. 9, § 3. According to Art. 9, § 6, the homestead "shall be exempt." There are no exceptions to the exemption. The widow's rights are not described or mentioned in Art. 9, § 3 and the word "exempt" is not used anywhere in that section. It is rather difficult for me to see how one could resort to the earlier section for a definition of the word "exempt" when that word is neither used nor defined there.

The homestead laws are remedial and are to be liberally construed in favor of the widow to effect the benign and beneficent purposes for which they are intended. *Colum* v. *Thornton*, 122 Ark. 287, 183 S.W. 205; *Bradley* v. *Humphreys*, 191 Ark. 141, 83 S.W. 2d 828; *Stuckey* v. *Horn*, supra; *Van Pelt* v. *Johnson*, 222 Ark. 398, 259 S.W. 2d 519; *Bunting* v. *Rollins*, 189 Ark. 12, 70 S.W. 2d 40; *Franklin Fire Ins. Co.* v. *Butts*, 184 Ark. 263, 42 S.W. 2d 559. We reviewed earlier authorities on these purposes in *Grimes* v. *Luster*, 73 Ark. 266, 84 S.W. 223, viz:

> " * * * The protection of the family from dependence and want is the object of all homestead laws." *Harbison* v. *Vaughan*, 42 Ark. 539. "One of the objects of the Constitution is to secure to the widow and orphan the family rooftree as a fixed home during the widowhood or life of the widow and minority of the children." *Garibaldi* v. *Jones*, 48 Ark. 230, 2 S.W. 844. "Looking to the ultimate purpose of such provisions, the protection of the debtor's family against the vicissitudes of fortune." *Ward* v. *Mayfield*, 41 Ark. 94. * * *

All presumptions are in favor of the preservation and retention of the homestead. *City National Bank* v. *Johnson*, 192 Ark.

945, 96 S.W. 2d 482. We must determine the meaning of the word "exempt" in the light of the pertinent rule of liberal construction. To refer this word to the clause of § 3, to which resort is made by the majority, is certainly liberal to the creditor, not the widow. This approach also requires that the clause from § 3 be tacked onto the word "exempt" in § 6 so that § 6 says that the homestead shall be exempt "from the lien of any judgment, or decree of any court, or the sale under execution or other process thereon, except such as may be rendered for purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians or receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity." To do this requires that the words "not be subject to" be translated to mean "from." They do not. We have said that under the plain provisions of Art. 9, § 6, the homestead of the husband became the wife's for life, exempt from any debts. *Butler v. Butler,* 176 Ark. 126, 2 S.W. 2d 63.

We should look for the most liberal definition of the word "exempt," i.e., the one most favorable to the widow. "Exempt" means "to release, discharge, waive, relieve from liability." *Davidow v. Jenks,* 48 N.Y.S. 2d 586 (1944). It has been ascribed the following meaning: "to take out of or from," "to free from" any service or burden to which others are subject. *In the Matter of Sowers,* 60 N.C. 384 (1864). The word "exemption" means the act of exempting or the state of being exempt. Webster's New International Dictionary (2d Ed.). The provisions of Art. 9, § 6 created an exemption by declaring that the homestead "shall be exempt." The mere fact that the land was a homestead would not have made the land exempt, in the absence of the pertinent constitutional language creating an exemption. This distinction is pointed out in *In re Trammell,* 5 F. 2d 326 (N.D. Ga., 1925), viz:

> Let it be remembered that a "homestead" and an "exemption" are quite different things. A "homestead" is properly "the home place — the home and the adjoining land." Bouvier, Law Dict. (3d Ed.). It is therefore realty. When established according to statutory requirements, it is commonly made exempt from forced sale, and the family is often given special rights in it. An "exemption" is "the right given by law to a debtor to re-

tain a portion of his property without its being liable to execution at the suit of a creditor or to distress for rent." Bouvier, Law Dict. (3d Ed.). This right of the debtor may refer to realty, personalty, or both. ***

It behooves us then to see what the word "exemption" means. It is an immunity or privilege. *State* v. *Smith,* 158 Ind. 543, 63 N.E. 25 (1902); *People* v. *Rawn,* 90 Mich. 377, 51 N.W. 522 (1892); *Green* v. *State,* 59 Md. 123, 43 Am. Rep. 542 (1882). In *Bartholomew* v. *City of Austin,* 85 F. 359 (5 Cir., 1898), the court said:

> *** "Exemption" means free from liability, from duty, from service. It is a grace, a favor, an immunity; taken out from under the general rule, not to be like others who are not exempt; to receive, and not make a return.

In *Clark* v. *Nirenbaum,* 8 F. 2d 451 (5 Cir., 1925), the same court said:

> An exemption is the freedom of property of debtors from liability to seizure and sale under legal process for the payment of their debts.

A statement found in *General Motors Acceptance Corp.* v. *Falcone,* 130 N.J. Super. 517, 327 A. 2d 699 (1974) relating to personal property, but appropriate to the context of this case, is:

> Exemptions as the term is used in connection with the rights of creditors seeking to secure their debts can be said to be the right of a debtor to retain a portion of his personal property free from seizure under judicial process. 31 Am. Jur. 2d, Exemptions, § 1.

A liberal construction of Art. 9, § 6 means that the homestead rights of Mrs. Sulcer were immune from seizure under judicial process subject only to the qualifications applicable to Clyde Sulcer. We should read it that way.

My position is reinforced by the fact that the widow's right in her husband's homestead is the kind of interest that almost defies definition. We have not always been consistent in attempting to classify it, having said at times that it was not an estate at all, but only the privilege of occupancy. See *Neeley* v. *Martin,* 126 Ark. 1, 189 S.W. 182. Our latest, and

perhaps best effort, to define it was in the opinion in *Maloney* v. *McCullough*, 215 Ark. 570, 221 S.W. 2d 770, where we said:

> Homestead is a valuable right, interest or estate in land which vests in the widow "during her natural life" under Art. 9, Sec. 6 of our Constitution unless and until abandoned or forfeited by the widow.

The right is purely personal to the widow. *Neeley* v. *Martin,* supra. In *Henderson* v. *Henderson,* 212 Ark. 31, 204 S.W. 2d 911, it is described as "individual and indivisible."

I ask, if the homestead right is one which the widow can abandon or forfeit, upon what can appellee levy or what will the purchaser at a sale buy? If Mrs. Sulcer leaves this homestead and establishes one of her own on her own lands, she may be taken to have abandoned her homestead on her husband's lands, for she cannot have two homesteads, and she, and no one else, has the right of election. *Wilmoth* v. *Gossett,* 71 Ark. 594, 76 S.W. 1073; *Davenport* v. *Devenaux,* 45 Ark. 341; *Van Pelt* v. *Johnson,* 222 Ark. 398, 259 S.W. 2d 519. Cf. *Butler* v. *Butler,* 176 Ark. 126, 2 S.W. 2d 63. See also, *Grimes* v. *Luster,* 73 Ark. 266, 84 S.W. 223. The rents and profits from the land are vested in her, but any attempt by her to convey her rights constitutes an abandonment. *Warren* v. *Martin,* 168 Ark. 682, 272 S.W. 367; *Sheppard* v. *Zeppa,* 199 Ark. 1, 133 S.W. 2d 860. Her creditors would have no right to complain about the conveyance. *Bradley* v. *Humphreys,* 191 Ark. 141, 83 S.W. 2d 828. She would also abandon her homestead rights if the heirs sought to partition it, and she did not assert her rights. *Henderson* v. *Henderson,* supra. Since her right is personal, I do not see how either appellee, or the purchaser at an execution sale, if there could by any stretch of the imagination be one, could assert it. All that I can see that the judgment in this case would accomplish is the ouster of the widow.

An excellent summary of the Arkansas law in this respect which illustrates this point is found in the opinion of Chief Judge (now Circuit Judge) Henley in *U.S.* v. *164.51 Acres of Land, Etc.,* 205 F. Supp. 202 (E.D., 1962). He said:

> \*\*\* In Arkansas the "homestead estate" created by the

Constitution is not a conventional life estate, although it is frequently called such and, indeed, for certain purposes is such. See in this connection: Jones "Arkansas Titles," § 893 including 1959 Annotated Supplement; *Meadows* v. *Hardcastle,* 219 Ark. 406, 242 S.W. 2d 710; *Maloney* v. *McCullough,* 215 Ark. 570, 221 S.W. 2d 770; *Killeam* v. *Carter,* 65 Ark. 68, 44 S.W. 1032; *Barnett* v. *Meacham,* 62 Ark. 313, 35 S.W. 533. It differs from the conventional life estate in that it is purely personal to the widow and minor children of the decedent. While the widow is not required to live upon the homestead premises, and while a re-marriage by her does not deprive her of homestead rights, still, her interest being personal to her is not transferable, and a sale by her of the homestead interest or of the lands affected by the homestead estate conveys nothing to the grantee but amounts to an abandonment of the homestead by the widow, which gives the heirs a right to the immediate possession of the property. *Meadows* v. *Hardcastle,* supra; *Stover* v. *Holman,* 229 Ark. 658, 317 S.W. 2d 722; *Rone* v. *Sawrey,* 197 Ark. 472, 123 S.W. 2d 524; *Henry* v. *Dollin,* 195 Ark. 607, 113 S.W. 2d 97; *Clark* v. *Friend,* 174 Ark. 26, 295 S.W. 392; *Brinkley* v. *Taylor,* 111 Ark. 305, 163 S.W. 521; *Barnett* v. *Meacham,* supra.

I would reverse the judgment, both in substance and form.