2011 Ark. App. 163

**Patrick SEXTON, Executor of Estate of Clyde J. Sexton, Deceased, Appellant**

v.

**Bobbie SEXTON, Appellee.**

**No. CA 10–863.**

Court of Appeals of Arkansas.

March 2, 2011.

---

**680**

George Christopher Walthall, Malvern, for appellant.

Adam Jay Williams, Hot Springs, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Patrick Sexton, as executor of his father's estate, contends that the trial court erred in finding that appellee Bobbie Sexton was entitled to a homestead in his father's estate. We affirm the trial court's order.

*Statement of Facts*

Bobbie Sexton was married to Clyde Sexton in 1983, and the couple separated in 1990. Bobbie claims that Clyde was abusive to her, which caused her to move into her drapery shop. The drapery shop was property on Highway 51 that she and Clyde owned together. Clyde remained at 252 Marjorie Lane, the house he owned prior to his marriage with Bobbie and where they lived until the date of separation. Bobbie claimed that she always planned on moving back to the marital home, where she had left clothes and several belongings, but she did not think Clyde had changed enough for her to go back.

Clyde Sexton died on September 20, 2007, and a petition for probate of will and appointment of personal representative was filed on September 26, 2007. Clyde left his estate to his son Patrick and specifically left nothing to his estranged wife Bobbie, who signed a statutory election form on October 31, 2007, to take against the will. On November 24, 2009, Bobbie filed a petition seeking to reserve as her homestead the property at 252 Marjorie Lane. Clyde's estate filed a response arguing that Bobbie did not qualify for homestead rights in the Marjorie Lane property because she had lived separate and apart from Clyde for many years prior to his death and she was living in her current residence on Highway 51, which was property she had acquired jointly with Clyde that became wholly hers upon Clyde's death.

Following a hearing, the trial court granted Bobbie's claim for homestead rights in 252 Marjorie Lane by order filed May 12, 2010. The estate filed a timely notice of appeal on May 24, 2010. This appeal followed.

*Applicable Law*

The constitutional provision at issue is codified in Arkansas Code Annotated section 28–39–201(a) (Repl.2004), which provides as follows:

> If the owner of a homestead dies leaving a surviving spouse, but no children, and the surviving spouse has no separate homestead in his or her own right, the homestead shall be exempt, and the rents and profits thereof shall vest in the surviving spouse during his or her natural life.

*See* Arkansas Constitution, art. 9, § 6 (1874).

We review probate matters de novo but will not reverse probate findings of fact unless they are clearly erroneous. *McAdams v. McAdams*, 353 Ark. 494, 109 S.W.3d 649 (2003); *Morton v. Patterson*, 75 Ark. App. 62, 54 S.W.3d 137 (2001). A finding is clearly erroneous when, although

there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed. *Morton, supra.* We also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *McAdams, supra.*

### Discussion

Patrick argues that the widows' and children's entitlement to homestead rights was enacted to ensure rights to widows and children left behind when a man died or was killed. He contends that at the time when the law was originally enacted, women were not entitled to a separate homestead from their spouses and in reality were denied actual ownership of a grand portion of the real estate located in this state. He argues that, since then, women have been recognized as having equal rights, including the ability to have separate homesteads and the right to own property in their own name, separate and apart from their husbands.

He avers that, in the case at hand, Bobbie and Clyde were separated for seventeen years, during which time she lived in property owned in both their names on Highway 51. He emphasizes that twenty-six months after Clyde's death, Bobbie claimed a homestead exemption in the Marjorie Lane property, despite the fact that she had, by operation of law, been made sole owner of the Highway 51 property, where she had made her home for seventeen years prior to his death. Patrick contends that the application of the widow's exemption in these circumstances amounts to a double reward to Bobbie and defeats the intent for which the exemption and privilege were designed.

He cites *Garabaldi, Adm'r v. Jones*, 48 Ark. 230, 2 S.W. 844 (1886), where the Arkansas Supreme Court considered the issue of whether a widow can alienate her right to the homestead. The supreme court held that the widow cannot alienate her rights, but had forfeited her rights when she conveyed the lands in question to appellees. *Id.* at 237, 2 S.W. at 847. He also cites *Duffy v. Harris*, 65 Ark. 251, 45 S.W. 545 (1898), where the court held that the widow did not, by her abandonment of her husband, and living apart from him in another state, forfeit her right to his homestead, and *Johnston et al. v. Turner, Adm'r*, 29 Ark. 280 (1874), where the court held that actual occupancy of the homestead by the wife before the husband's death was not required in order for her to claim that property as her homestead after his death. Patrick contends that these cases were decided when a wife was not allowed to have a domicile separate and apart from her husband. Consequently, a wife could not make for herself a domicile separate from that of her husband, and no legal rights either came or left because of her action.

Patrick argues that Bobbie's election twenty-six months after his father's death confirms that she had a homestead in her own right, where she resided for those twenty-six months. He claims that the only proof regarding her intention to take the Marjorie Lane property at the time of Clyde's death, other than the election, was her self-serving testimony. He points out that she further testified that she did not have any idea if she would ever return to Marjorie Lane when she separated from Clyde. He contends, therefore, that when she became the sole owner of the Highway 51 property at Clyde's death, that property became her homestead.

Both parties cite *Bruce v. Bruce*, 176 Ark. 442, 3 S.W.2d 6 (1928), as having facts similar to the instant case. In *Bruce,* the wife owned land prior to her marriage. *Id.* at 442, 3 S.W.2d at 7. Upon her marriage, she lived with her husband until

they separated, and she moved back to her original homestead. *Id.* The parties never divorced, and upon the husband's death, the wife demanded the husband's land as her homestead. *Id.* at 443, 3 S.W.2d at 7.

Patrick claims that *Bruce* is distinguishable from the case at hand in that there is no co-ownership of property involved and the evidence in *Bruce* was that the wife had been welcome to return to the husband's property whenever she wanted. *Id.* Patrick contends that the prevailing logic by the *Bruce* court was the wife's inability to have a legal domicile separate from her husband. Further, he points out that the wife immediately tried to gain possession of the deceased husband's home. The *Bruce* court stated, "If, after his death, she had remained on her own property, claiming that as her homestead, it might have been an abandonment of her homestead in his estate. But she did not do this." *Id.* at 447, 3 S.W.2d at 8. Patrick points to Bobbie's twenty-six-month delay in claiming the Marjorie Lane property and argues that she abandoned any homestead in it.

However, Bobbie argues that the issue of the timeliness of her election to the Marjorie Lane property was not before the trial court. During the trial court's hearing, counsel for the estate stated,

Your Honor, I resent the question that [sic] there's never been a dispute as to when she claimed it, the question is is she entitled, as I stated in the letter. Mr. Williams is making an issue that's not before the Court. We've never once claimed she didn't timely file. We haven't brought that up.

The trial court asked, "So am I to understand there is not an issue that she did not—that she has not at least put everybody on notice and has made a formal election to exert her homestead right." Counsel for the estate responded, "There is not a written request for such, but we all knew she wanted the house, okay." The trial court concluded by stating,

For the Court's purposes, the Court is, at this juncture, going to be considering not whether there was a technical election to exercise homestead, that has been done sufficiently by the notices and by the obvious knowledge of the estate that she wanted to move into that home. So the only thing the Court is trying to resolve today is, for some reason or another, is she entitled to exercise [sic] to have that homestead right.

Based on the above ruling, the parties stipulated as to the timing and did not litigate the issue as to whether she waited too long to exercise her rights. As noted by Patrick's counsel, the estate knew she intended to claim the Marjorie Lane property, and this issue was not litigated at the trial-court level. Failure to obtain a ruling on an issue from the circuit court precludes review on appeal. *See, e.g., Garcia v. Estate of Duvall,* 375 Ark. 520, 293 S.W.3d 389 (2009).

Bobbie responds to the argument that she abandoned the homestead by contending that courts have consistently ruled that, in order to constitute an abandonment of a homestead, the owner must leave it with the intention of renouncing it and forsaking it, never to return; in other words, the law does not require continuous occupation of the homestead in order to make the homestead election. *See Monroe v. Monroe,* 250 Ark. 434, 465 S.W.2d 347 (1971); *Bradley v. Humphreys,* 191 Ark. 141, 83 S.W.2d 828 (1935). Further, in response to Patrick's argument that the law regarding homestead rights is antiquated, Bobbie cites *Middleton v. Lockhart,* 344 Ark. 572, 43 S.W.3d 113 (2001), where the Arkansas Supreme Court held that homestead rights were extinguished by the wife when she mur-

dered her husband. We agree with Bobbie's contentions.

*Bruce, supra,* is controlling. In that case the opposing party argued that the widow was not entitled to claim the homestead out of the lands because she abandoned her husband and lived apart from him on a homestead that belonged to her personally. In other words, since she owned and occupied a separate homestead in her own right, her opponents argued, she should not be able to claim a homestead from the deceased husband. However, since the right to elect the homestead accrues at the death of the spouse, not during the marriage, it did not matter that she lived on another piece of property in which she possessed an interest.

The *Bruce* court noted that it would be unreasonable to deny a widow a right to a homestead where the conduct of a man is such that a wife must live with him agreeably until he dies in order to be entitled to the homestead and that she would disentitle herself by leaving him, no matter what the treatment may have been. The fact that they could not agree and that this failure to agree made it necessary for her to live apart from him did not deprive her of her homestead rights.

The facts contained within *Bruce* and the facts contained within this case are virtually the same. In both cases, the wives were forced to leave the marital home due to an abusive situation. They lived in a structure and on property in which they possessed an interest in their own right. The court in *Bruce* noted that even if there had been a desertion, it did not amount to a forfeiture of that widow's homestead right, and it was immaterial that she had an ownership interest in other property. The spouse's right to a widow's homestead accrued when her husband died, and she had a right to elect her homestead then. *Bruce,* 176 Ark. at 444, 3

S.W.2d at 7. Bobbie argues, as was stated in *Bruce,* that if her desertion did not deprive her of her homestead right, certainly the fact that she lived on property belonging to her personally would not affect it. *Id.* at 446, 3 S.W.2d at 8.

The question of whether Bobbie abandoned the property was answered by her testimony that she always intended to go back. The *Bruce* court noted that "an abandonment is accomplished not by going away without the intention of returning at any particular time in the future, but by going away with the definite intention never to return at all." *Bruce,* 176 Ark. at 447–48, 3 S.W.2d at 8. Thus, the trial court's order should be affirmed as to Bobbie's right to a homestead in the Marjorie Lane property. Based upon the evidence, a determination that she did not intend to abandon the homestead is not clearly erroneous. Further, the timeliness of her claim was not an issue before the trial court.

Affirmed.

VAUGHT, C.J., and MARTIN, J., agree.